## Tannahill *et al. vs.* Tuttle.

By a mortgage of chattels, the whole legal title of the property passes to the mortgagee conditionally, and upon breach of condition, the title of the mortgagee becomes absolute. The general title being in the mortgagee, he is entitled to immediate possession of the property and to hold until condition broken, unless the parties stipulate otherwise.

Whether at common law a mortgagor has an equity of redemption after forfeiture where there is no statutory proviso relating to redemption, or whether Courts of Equity will interfere to allow a redemption, is unsettled; although, according

to the later authorities, Courts of Equity may interfere to prevent gross injustice.

Where the mortgagor is permitted to retain possession, such possession is in law the possession of the mortgagee, who may at any time maintain trespass, trover or replevin for any intermeddling with or taking the property by a third party; and this right of action exists where the property is taken by an officer under color of legal process, as well as when taken without authority of law.

The right to seize and sell the interest of a mortgagor under legal process, exists only when he is entitled to possession under agreement to that effect, and not when his possession is by permission merely, nor after condition broken.

The provision of the R. S., § 23, p. 478, was not designed to create rights in the mortgagor and subject them to seizure, but only extends the remedy by execution over rights in existence, and does not authorize the sale of a mortgagor's interest either before or after condition broken, when no right of possession was reserved to him. Whether the interest of the mortgagor holding possession by permission, although liable to levy under execution, is yet liable to be seized and held by attachment—*quere.*

Error to Wayne Circuit.

This was an action of replevin. The plaintiff claimed and proved title to the property replevied, under a mortgage from the original owners, Crane & Folger. The mortgage was executed to indemnify them for endorsing a note for Crane & Folger. The note was not paid at maturity, and was subsequently paid by plaintiffs, who thereupon took possession of the mortgaged property. It was subsequently taken from their possession by the defendant on a writ of attachment against the mortgagees, Crane & Folger.

The defendant insisted on the trial, 1st, that he had a right to attach the interest of the mortgagors in the property, and to seize and hold the property for the purpose of selling such interest on execution; 2d, that defendant was entitled to a judgment for a return of the property to be held by him for such a purpose; 3d, that at most, plaintiffs were only entitled to a judgment for the amount of their interest as mortgagees, and that defendant was entitled to a judgment for a return of the property on payment of that amount.

14

All these positions were overruled by the Court, and judgment rendered for plaintiffs. Defendant excepted.

*C. I. & E. C. Walker*, for plaintiffs.

1. By a mortgage of personal property, the title passes *conditionally* to the mortgagee, and on a breach of the condition he becomes the *absolute* owner. (*Story on Bail.* § 287; 2 *Story's Eq.* § 1034; 2 *Hill. on Mort.* 315, 344; *Brown* vs. *Bement*, 8 *J. R.* 97; *Langdon* vs. *Buel*, 9 *Wend.* 83; *Patchin* vs. *Pierce*, 12 *Wend.* 62; *Holmes* vs. *Bell*, 3 *Cush.* 322; *Wood* vs. *Dudley*, 8 *Vt.* 435.)

2. And in the absence of any provision to the contrary, the mortgagee is entitled to possession, even before a breach of condition; and the possession of the mortgagor is the legal possession of the mortgagee. (*Melody* vs. *Chandler*, 12 *Me.* 282; *Pickard* vs. *Low*, 3 *Shep.* 48; *Welch* vs. *Whittemore*, 25 *Me.* 87; 2 *Hill. on Mort.* 330, 331; *Bracket* vs. *Bullard*, 12 *Met.* 319.)

3. Except by provisions of statute, property mortgaged is not subject to attachment or levy, either before or after condition broken. (*Badlam* vs. *Tucker*, 1 *Pick.* 399; *Holbrook* vs. *Baker*, 5 *Greenlf.* 312; *Haven* vs. *Low*, 2 *N. H.* 16; *Howland* vs. *Willett*, 3 *Sandf. S. C.* 609; *Marsh* vs. *Laurence*, 4 *Cow.* 467; *Mattison* vs. *Bancas*, 1 *Comst.* 295; *Hill. on Mort.* 270–2; 22 *Sup. Dig.* 733, §§ 379, 382, 385.) Contra—Melody *vs.* Chandler, (3 *Fairf.*) 12 Me. 285; Welch *vs.* Whittemore, 12 Shep. 87; Ballune *vs.* Wallace, 2 Rich. (*S. C.*) 80.

In this case the plaintiffs had not only the *right* of possession, but the *actual possession* of the mortgaged property, and their title had become *absolute* by a breach of the condition of the mortgage.

The property was not liable to attachment as the property of the mortgagors, unless by some special provision of the statute. It is claimed that this attachment is authorized by

Revised Statutes, p. 476, § 23. We think the true and proper construction of the statute to be, that it authorizes the sale on execution of the interest of the mortgagor, when he has a right of possession and *before breach of condition.* After breach of condition, he has no right and interest to be sold. A tender of performance *after forfeiture,* does not reinvest the mortgagor with the title to the property, or confer upon him any right whatever over it. (*Brown* vs. *Bement,* 8 *J. R.* 96 ; *Patchin* vs. *Pierce,* 12 *Wend.* 62 ; 2 *Hill. Mort.* 322; *Brown* vs. *Lipscomb,* 9 *Port.* 474.)

The Legislature did not intend that the purchaser should acquire a higher right than that possessed by the mortgagor.

The only possible claim a mortgagor can have in mortgaged property in possession of the mortgagee, after forfeiture, is a naked equity of redemption.

Such an interest is incapable of seizure, and is never liable to attachment or sale on execution, save by the *clear* provisions of statute.

And it is doubtful even if *this* right exists. (*Hill. on Mort.* 314.)

Judge Story thinks there may be such a right, but the only cases he refers to are cases of pledge. (*2d Story's Eq.* § 1031; *Kemp* vs. *Westbrook,* 1 *Ves.* 278 ; *Hart* vs. *Ten Eyck,* 2 *John. Ch.* 101.)

There is a broad distinction between pledges and mortgages. In the one case the party has a mere *lien,* the general property still remaining in the pledgor. In the other the absolute title vests in the mortgagee after condition broken. (2 *Story Eq.* § 1030 ; 2 *Hill. on Mort.* 344.)

The statute relied upon does not authorize an attachment of the mortgagee's interest, but simply a sale on execution.

In Massachusetts, where the statute authorized the *attachment* of just such property as this, it was held that it could not be taken on execution. (*Lyon* vs. *Coburn,* 1 *Cush.* 299.)

So here, if its seizure be authorized on execution, it is not, on attachment.

*L. Bishop,* for defendant.

1. As a matter of course, whatever property may be levied upon and sold on execution, may be seized on attachment. (*R. S., p.* 391, §§ 25, 26, 28, 29; *Tif. Treat.* 35.) And the lien of the officer on the property attached, continues till after judgment and execution, and a levy by virtue of the execution. (*R. S., p.* 550, § 38; *Van Loan* vs. *Kline,* 10 *J. R.* 131 ; *Sterling* vs. *Welcome,* 20 *Wend.* 238.)

2. Crane & Folger had an interest that was subject to attachment, and to sale on execution ; and the defendant had a right to hold possession for a time sufficient to effect such sale. (*Codman* vs. *Freeman,* 3 *Cush.* 306.)

The R. S., page 476, section 23, must have been intended to cover such a case as this. The words "pledged by way of mortgage," are the words used in this section. To *pledge* property is to deliver it into the possession of another to be held as security. (2 *Kent Com.* 576 ; *Story on Bail.* § 286.) Such is the case here, and the defendant had a right to attach the pledger's interest, and hold possession for the purpose of a sale. (*Bakewell* vs. *Ellsworth,* 6 *Hill,* 484.)

A statute of Kentucky, though more full in its terms, is substantially the same as ours. It provides that when estate, real, personal or mixed, is covered by mortgage or other incumbrance, the right, title and interest, legal or equitable, of the mortgagor, shall be subject to levy, &c., as if no such incumbrance existed. The purchaser may take it subject thereto and discharge the same, in the same manner as the mortgagor might do. The words "right and interest" used in our statute to indicate the subject to be levied on, are as broad in their signification as the words "right, title and interest, legal or equitable," in the Kentucky statute. And therefore, the following decisions on the latter are in point ;. (*Isaacs* vs. *Hobbs,* 8 *Dana,* 268 ; *Fugate* vs. *Clarkson,* 2 *B. Mun.* 41.) The general rule independent of the statute is,.

Tannahill *et al.* *vs.* Tuttle.

that until the title of the mortgagee becomes absolute by default, the mortgagor's interest is subject to levy and sale on execution. (*Bank of Lansingburgh* vs. *Crary*, 1 *Barb. S. C. R.* 542; *Baily* vs. *Burton*, 8 *Wend.* 339; *Wheeler* vs. *McFarland*, 10 *Wend.* 320; *Randall* vs. *Cook*, 17 *Wend.* 53.)

Unless the doctrine we contend for prevails, the hardship of the law will be manifest. In this case, the property levied on is worth several hundred dollars more than the interest of the mortgagees in it. We cannot proceed in Chancery without a levy. (*McKibbon* vs. *Barton*, 1 *Mich. R.* 213.) And no levy and sale would be valid without actual possession of the property by the officer at the time of sale. (*R. S.*, 478, § 213; *Bakewell* vs. *Ellsworth*, 6 *Hill*, 484.)

3. But the plaintiffs were entitled to no more than a special judgment, under the R. S., 549, sec. 20.

This section applies to two classes of cases; first, when either party has a *lien upon* the goods, which implies no title or ownership *in* them, but only a right to *detain* them until the same claim be satisfied. (2 *Bouvier's Law D.* 43.)

Second, when either party has a *special property*, which implies an interest or title *in* the goods, either temporary, as in the case of animals, *feræ naturæ*, or limited in amount, as contradistinguished from the general ownership, as in case of a pledge, or mortgage not made absolute by a default or foreclosure. (2 *Black. Com.* 391 *to* 396; *Story on Bail.* §§ 93 *to* 96, 125; *Waterman* vs. *Robinson*, 5 *Mass.* 303; *Ludden* vs. *Leavitt*, 9 *Mass.* 104; *Commonwealth* vs. *Morse*, 14 *Id.* 217; *Brownell* vs. *Manchester*, 1 *Pick.* 232.)

The case at bar comes under the latter class. Where a plaintiff has only a special property in goods, and is not liable over to a third person, justice is done by giving him damages, or a judgment to the extent of his interest or claim. (*Codman* vs. *Freeman*, 3 *Cush.* 306.)

This is our case. The plaintiffs have a special property, and are liable over to their mortgagors only. The interest

of the mortgagors we hold under the attachment, and no others have an interest in the property.

By the Court, MARTIN, J.

The first question made in this case is, whether Crane & Folger, the mortgagors, have an interest in the property which was liable to an attachment, and levy and sale upon execution, and whether the defendant in suing the writ of attachment, had a right to hold the property, in order that such interest might be disposed of.

By a mortgage of chattels, the whole legal title of the property passes to the mortgagee conditionally, and to defeat such title, the mortgagor, or those claiming under him, must show a performance of the condition. Upon its breach, the title is absolute in the mortgagee, as the general owner, and cannot be questioned in a Court of law. (*Story on Bail.* § 287; 2 *Hill. on Mort.* 315, 344; *Butler* vs. *Miller,* 1 *Denio,* 407; *Sumner* vs. *Batchelder,* 30 *Maine,* 39; *Thornhill* vs. *Gilmer,* 4 *Sm. and M.* 153; *Brown* vs. *Bennet,* 8 *J. R.* 98; 1 *Barb. S. C.* 548; 9 *Wend.* 83, 84; 7 *Cow.* 292; *Wood* vs. *Dudley,* 8 *Vt. R.* 435; *Gifford* vs. *Ford,* 5 *Id.* 532; *Melody* vs. *Chandler,* 3 *Fairf.* 282; *Flanders* vs. *Barstow,* 18 *Maine,* 357; *Badlam* vs. *Tucker,* 1 *Pick.* 389; *Pickard* vs. *Low,* 15 *Maine,* 48; *Howland* vs. *Willett,* 3 *Sand. S. C. R.* 607; *Spriggs* vs. *Camp,* 2 *Speers,* 181; *Burdick* vs. *McVanner,* 2 *Denio,* 170; *Charter* vs. *Stevens,* 3 *Id.* 33; *Bank of Rochester* vs. *Jones,* 4 *Comst.* 498; *Alden* vs. *Lincoln,* 13 *Metc.* 204; *Hall* vs. *Snowhill,* 2 *Greene, N. J.* 8.)

And whether at common law, such mortgagor has an equity of redemption, or whether Courts of Equity will interfere, and allow a redemption, where there is no statutory provision relating to redemption, is not definitely settled, although the latter opinion seems to be that equity will interfere to prevent gross injustice. (1 *Pars. on Cont.* 452; 2 *Hill. on Mort.* 314; 2 *Story Eq. Juris.* § 1031; *Brown* vs. *Lips-*

*comb,* 9 *Port.* 472; *Story on Bail,* § 287, *and cases cited;* *White* vs. *Cole,* 24 *Wend.* 117, 143.) The general title then being in the mortgagee, he is entitled to immediate possession of the property, to hold it until condition broken, unless the parties otherwise stipulated in the mortgage; without such agreement, the possession of the mortgagor (if suffered to retain the property) is deemed the possession of the mortgagee, so that he may reduce the property to possession at any moment, and may maintain trespass, trover or replevin, as the case may be, for any intermeddling with, or taking of the property by a third party while in the possession of the mortgagor, equally as though such possession were actually in himself. See cases above cited; also, Welch *vs.* Whittemore, 25 Maine, 86; Paul *vs.* Hayford, 9 Id. 234; Brackett *vs.* Bullard, 12 Metc. 310; Alden *vs.* Lincoln, 13 Metc. 204; Ferguson *vs.* Thomas, 26 Maine, 499; Case *vs.* Winshop, 4 Blackf. 475. And so absolute is this title, and consequent right to immediate possession held, that even the agreement that the mortgagor may retain possession until condition broken, is personal, and the mortgagee may maintain trover for the property, before condition broken, against a purchaser from such mortgagor. Such agreement is not assignable to others, either by the mortgagor, or by sale or levy on his property for debts. See Bullen *vs.* Wallace, 2 Rich. S. C. R. 80. So upon condition broken, the mortgagee may immediately sell, or otherwise dispose of the property. See Wood *vs.* Dudley, 8 Vt. 438; Burdick *vs.* McVanner, Charter *vs.* Stevens, *ubi supra;* Holmes *vs.* Bell, 3 Cush. 322. Indeed, this necessarily follows from the foregoing principles, for it is inconsistent with an absolute title, to hold that the power of sale, or other disposition of the property, does not exist in the person holding it, nor is this inconsistent with the right of the mortgagor to resort to equity to redeem the property at any reasonable time before such sale, or other disposition of the property shall be made. See Patchin *vs.* Pierce, 12 Wend. 61.

The right of action in the mortgagee for an unlawful interference or intermeddling with the property mortgaged, exists as well when the property is taken by an officer under color of legal process, as when it is taken without color of authority of law, as will be seen by reference to nearly all the cases I have above cited.

It is a singular fact that very much of the law determining the rights of parties to chattel mortgages, has been settled in adjudications between mortgagees and the ministerial officers of the law, who have attempted to make the title of the mortgagor subservient to the claims of his creditors. When the condition of the mortgage has become broken, and the title in the mortgagee becomes absolute, his right to reduce the property to possession, and to hold it against all the world, as a principle of common law is beyond question. That he cannot be disturbed in that possession, except through the intervention of the Courts of Equity, is equally clear. In the case at bar it is found that the condition of the mortgage was to indemnify the plaintiffs against the consequences of their endorsement of a note for the accommodation of the mortgagors; that the note was dishonored and then taken up by the plaintiffs, who immediately afterwards took possession of the property mortgaged, and held it under such possession until it was seized by the defendant, by virtue of a writ of attachment issued by a Justice of the Peace some sixteen days after such acquisition of the possession by the plaintiffs, upon a debt claimed to be due to one Henry Barns from the mortgagors. The defendant attached the right and title of said mortgagors, but seized the property and retained it from the possession of the plaintiffs, to satisfy any judgment which might be rendered in their attachment suit.

It is contended by the defendant's counsel that this right of seizure and possession is given to the defendant by the provisions of the Revised Statutes. By the provisions of chap. 93, § 26, the officer serving a writ of attachment is

required to seize so *much of the goods and chattels* of the defendant—excepting such as are by law exempt from execution—as will be sufficient to satisfy the plaintiff's demand, and safely keep the same to satisfy any judgment that may be recovered by the plaintiff in such attachment, &c. This lien of the officer necessarily continues until after judgment and execution, and a levy by virtue of such execution. See also R. S. p. 550, § 38. If then the defendant had a right to make the seizure in this case, his lien was perfect at the time of the institution of this suit. Had he such right? At the common law, goods and chattels mortgaged, whether in possession of the mortgagor or mortgagee, were not subject to levy and sale upon execution either before or after condition broken. (*See opinion of Story in Conard* vs. *Atlantic Ins. Co.*, 1 *Pet. R.* 440, 441; *Marsh* vs. *Lawrence*, 4 *Cow.* 467 ; *Holbrook* vs. *Baker*, 5 *Greenl.* 312, *marg.; Melody* vs. *Chandler, Badlam* vs. *Tucker, ubi supra.*) It is said in Bailey *vs.* Burton, 8 Wend. 347, that when the mortgagor had a right to redeem and a right to the possession for a definite period, before the property can become forfeited, the mortgagor has an interest which may be sold on execution. The purchaser in such case takes the property subject to the incumbrance : he purchases the right of the mortgagor, which is a right to the possession and the absolute ownership, subject to the incumbrance ; but if the mortgage at the time of the sale on execution had been forfeited, the mortgagor had not the right to possession for a moment ; all the right he has is in equity. See also Wheeler *vs.* McFarland, 10 Wend. 322, where Savage, C. J., in speaking of the right to sell the interest of the possessor of personal property, says, " such is the case *possibly* of a mortgagor in possession before forfeiture." See also Charter *vs* Stevens, *ubi supra ;* Bank, &c. *vs.* Crary, 1 Barb. S. C. 543.

At the most, then, a right to seize and sell the interest of a mortgagor only exists, when he is entitled to the possession

under an agreement to that effect—and not when his posses-sion is by permission—nor after condition broken. See also Perkins *vs.* Mayfield, 5 Porter, 182 ; King *vs.* Bailey, 8 Miss. R. 332. But we are told that all property not exempt by law from execution, is liable to attachment, and by the provisions of § 23, p. 476, of the R. S., the interest of the mortgagor was liable to seizure and sale. The section is as follows : "When goods or chattels shall be pledged by way of mortgage or otherwise, for the payment of money or the performance of any agreement or contract, the right and in-terest in such goods of the person making such pledge, may be sold on execution against him, and the purchaser shall acquire all the rights and interest of the defendant, and shall be entitled to the possession of such goods and chattels on complying with the conditions and terms of the pledge"—and by § 32 sales of personal property are prohibited, except the same be present and exposed to the view of those attend-ing the sale.

We have already shown that the mortgagor after condition broken, has nothing left, unless it may be an equity of re-demption, which is not a *legal* interest, and is not the subject of levy and sale. The statute was not designed to create rights, and subject them to seizure, but only to extend the remedy by execution over rights in existence. Such is the only construction which can be placed upon it consistent with law and the rights of parties. The language of the section relates to goods *pledged by way of mortgage* or otherwise, authorizes a sale of the *pledgor's* interest, and confers upon the purchaser at such sale all the rights and interest of the *pledgor*, and entitles him to possession only upon complying with the terms and conditions of the *pledge*. Now although it is said "a mortgage is a pledge, and more—it is an abso-lute pledge to become an absolute interest, if not redeemed at a certain time," yet there is a broader distinction than this between them, for a mortgage passes the legal title, subject to

be defeated upon performance of a condition, while a pledge only passes the possession, or at most a special property to the pledgee, with a right of retainer, until the debt is paid or the other engagement is fulfilled. See cases above cited. In the one case the title becomes absolute at law upon breach of the condition—while in the other case the title never becomes absolute in the pledgee—and he has only a right to foreclose against the pledgor by proceedings in equity, or sale of the chattel after notice. See Story on Bail., § 308.

In the view of equity, a mortgage may be regarded as a "pledge and something more," and hence the jurisdiction courts of equity assume in relation to its redemption—but the law regards it rather as a grant or sale of the property, by which, unlike a pledge, a title passes, which becomes absolute upon breach of condition, without the intervention of any legal proceedings, or a decree of a court of equity. Now a mortgagor, unless he have a right of possession, has no legal title or interest in the property mortgaged. He has nothing which can be seized or sold, and by performance of the condition of the mortgage, he acquires a title and right of possession; of both which he was divested up to that period. What rights, then, at all analogous to those of a pledgor, has a mortgagor, which are legally tangible and subject to seizure and sale? The words "by way of mortgage," in § 23, therefore, can only relate to the right of possession, if any, which exists in the mortgagor, upon which right the property may be seized before condition broken, and the mortgagor's interest therein sold, and along with which the right to redeem is carried, according to the rule of Bailey *vs.* Burton. This construction of the statute harmonizes it with the common law, accords with the decisions of other States, and preserves the rights of the parties—while any other will impair the rights of parties, be utterly unavailing for the purposes contemplated, and as we shall presently see, be absolutely impracticable in execution. We are referred to § 32, as prescribing the manner in which this power must be executed.

That provides that personal property shall not be sold unless it be present and within view of those in attendance, and shall be offered for sale in such lots and parcels as shall be calculated to bring the highest price. If the mortgagor have neither the possession nor the right to possession, nor the title—nothing but a duty to perform, upon which the title to property may revert—he has in fact only an equity of redemption. What has he which may be taken into possession, produced at the sale, exposed to view, and parceled out for sale or delivered to the purchaser? To seize the property it would be necessary to dispossess the mortgagee, whose possession is rightful, and by virtue of a legal title—a proceeding without a parallel in law, and without any positive authority in the statute. It is hardly necessary, I imagine, to argue that no person can be deprived of his property, even for a temporary purpose—except by authority of law exercised directly against him, according to the course of judicial proceedings—or in the exercise of the right of pre-eminent sovereignty, and upon compensation being made. Under a statute of New York, and precisely like that of this State, except that the words "*by mortgage or otherwise*" are not found in it, it is yet an unsettled question whether the pledgee can be deprived of his possession for the purpose of sale under execution. (*Stief* vs. *Hart*, 1 *Comst.* 20.) The court of appeals of that State are equally divided upon the question, and the judgment of the court below sustaining the proposition, that property pledged might be taken into possession on an execution against the pledgor, for the purpose of sale of the pledgor's right, was by such decision affirmed. If the solution of that question is so difficult, how much less free from doubt is the present. In the case of a pledge, the title remains in the pledgor, and the sale of his interest is the sale of the title, subject to the pledgee's lien. In that of a mortgage the title is not in the mortgagor, and the sale is of an equity. The one is susceptible of being seized and taken

into possession and restored—the other is not. In the one case the possession alone passes by compliance "with the terms and conditions of the pledge," the title passing by the sale—in the other, the title passes, reverts, by performance of the condition, and does not by the sale. The pledgor has the general property in the thing pledged—a mortgagor has not before performance of condition. But if the mortgagor has the possession of the goods mortgaged, under an agreement to that effect, then he has a property which may be seized and sold, and by force of the statute draws with it the right to redeem, while if there be no such agreement, he is but the bailee of the mortgagee. These views are fully sustained by the authorities above cited, and give the statute a reasonable and practicable construction. These observations apply, in my judgment, as well to the sale of a mortgagor's interest before as after condition broken, when no right of possession is reserved to him. But after condition broken, the absolute title is in the mortgagee; there can, from the very nature of things, be no legal interest remaining in the mortgagor which can be sold. In New York, the statute allowing the interest of a pledgor to be sold under execution, has never been understood as extending to the interest of mortgagors. See *Mattison vs.* Bancas, 1 Comst. 295; Howland *vs.* Willett, 3 Sandf. S. C. R. 607; White *vs.* Cole, 24 Wend. 117, 142. In Massachusetts, by the provisions of statute, (*ch.* 90, § 78,) any personal property of the debtor which is subject to a mortgage, pledge or lien, may be attached and held, &c., provided the attaching creditor shall pay to the mortgagee, pawnee or holder of the property, the amount for which it is so liable, within twenty-four hours after the same is demanded. If such payment be not made, the attachment is dissolved and the property restored, and the attaching creditor held liable for any damages the mortgagee may have sustained. Thus in that State, by force of its statute, the right of attachment upon mesne process, is contingent upon the

right of redemption, and cannot be exercised after that is lost; and although the right of seizure is given in the first instance, yet there can be only a continued possession by the attaching officer upon payment of the debt secured, so that sale upon final process shall be of the title and not a right of redemption. So also the statute being in derogation of the common law, a strict compliance with its provisions is required to protect the officer and attaching creditor from liability for taking it. A very similar law exists in Maine, and the same rules and principles govern its execution. In Kentucky, it is provided by statute that when estate, real, personal or mixed, is held or covered by mortgage, deed of trust, or other incumbrance, all the right, title and interest, legal or equitable, which the mortgagor or grantor has in such real estate, shall be subject to be levied upon and sold by execution *in the same manner as such property might have been sold if no such incumbrance had existed;* and the purchaser shall take it subject to such incumbrance, and may pay off and discharge such incumbrance, and thereby perfect his title thereto in the same manner as the grantor, mortgagor, or any other person having an equity of redemption therein might do, provided (in cases other than the sale of real estate) that the purchaser or purchasers of any such mortgaged property, shall, before he takes possession of the property, give bond and security that he will not within twelve months sell or remove the property out of the State, but that he will during that time have the property at all times forthcoming, unavoidable accidents excepted, to any order or decree of any Court of competent jurisdiction. Under this statute it was held in McIsaac *vs.* Hobbs, 8 Dana, 268; Fugate *vs.* Clarkson, 2 B. Monroe, 41, that the property should be taken into possession by the officer upon execution and held for sale, and to these decisions our attention was called by the defendant's counsel. Such indeed is the clear import of the act itself, as it requires a levy and sale in the same manner as though no such incumbrance

existed. But our statute makes no such provision, and no rule of construction can be drawn from these cases, in aid of the power claimed to seize the property in possession of the mortgagee, and hold it for the purpose of selling the mortgagor's interest, even before condition broken. This statute of Kentucky has received a construction in the case of Swigert *vs.* Thomas, 7 Dana, 220, relative to the rights of possession of the purchaser and of the mortgagee, which strongly fortifies many of the views heretofore expressed, and the rights of a mortgagee as established at the common law most fully maintained. " We have no statute," says the Court, " qualifying this right; and we are not prepared to decide that the prevailing practice of permitting mortgagors to enjoy the possession and profits of the mortgaged property until foreclosure, should operate as a constructive abrogation of the mortgagee's common law right, or as an implied stipulation entitling the mortgagor as a matter of right to that possession, which as a matter of favor or of convenience he is generally permitted to enjoy." See also Dougherty *vs.* Linthicum, 8 Dana, 198.

We have heretofore treated this question as though the interest of a mortgagor, if subject to sale upon execution, would be liable to seizure upon attachment. It is clear that such liability could only exist, if at all, when the possession of the mortgagor is by agreement with the mortgagee, and before condition broken. It is not so clear, however, that such interest of the mortgagor is liable to attachment in any event. The remedy by attachment is a special remedy, unknown to the common law. No rights or powers are to be acquired by implication. The goods and chattels of the defendant not exempt from execution are subject to seizure under the writ. The interest of a mortgagor is neither goods or chattels subject to seizure at the common law—it is an equity of redemption intangible, and incapable of delivery. What we have already said respecting the nature of the rights of a mortgagee and the inability of an officer to divest him of his possession,

applies with still greater force to an attachment. The property must be kept to satisfy any judgment which may be rendered against the defendant. Thus it may be detained from the mortgagee for an indefinite period of time, and if of a perishable nature he may become thereby deprived of his title as well as his possession, and the whole security of the mortgage defeated. No provision is made by law for such contingency, nor for the discharge of the debt due the mortgagee by the attaching creditor. It is only upon execution sale that a creditor can acquire any rights over the property; no judgment can be rendered against such defendant, and thus no sale under execution had. Every thing conspires to show that the remedy by attachment could not have been intended to extend to such interest of a mortgagor. The statute which authorizes the sale of a pledgor's interest upon execution, is in derogation of the common law, and must be strictly construed. Its provisions cannot be extended by implication to any other remedy than that by execution sale, and especially not to a special statutory remedy which is silent in respect to it. The directions and provisions of this statute clearly assume that such right or interest can only be sold upon final process. The seizure by attachment is altogether different in its nature; it being a seizure upon mesne process, and not necessarily accompanied by a right to execution and sale.

In Lyon *vs.* Coburn, 1 Cush. 278, the question was, whether under the Statutes of Massachusetts the interest of a mortgagor, which might be seized in attachment, in which case ample provisions were made to protect the mortgagee's rights, could be seized upon execution in the first instance, and the Courts held that it could not, as the language of the statute was appropriate to an attachment upon mesne process, but not to a seizure or taking upon execution. So in Snyder *vs.* Hilt, 2 Dana, 204, it was held that the interest of a mortgagor was not liable to be sold under a distress for rent. The Court say : "an equity of redemption was not

distrainable at common law, and the statutes which subjected equities to sale under *execution* cannot consistently be so construed as to embrace distress warrants. The policy of these enactments was to substitute the liabilities of equities and choses in action for the *ca sa*, and a distress warrant is within neither the letter nor spirit of the provisions."

In looking through the reports of all the States, it will be found that statutes respecting the sale of a mortgagor's interests, have received a most strict construction, and no right not clearly within their letter has been built upon them.

The judgment of the Court below must, therefore, be affirmed with costs to the plaintiffs.

Douglass, J., did not participate, having decided the cause below.