## Horace Flanders v. Henry Chamberlain.

*Bill in equity: Equitable relief.* A bill in equity, which is demurrable as to the specific relief prayed, on the ground that the complainant has an adequate remedy at law, but which also contains a prayer for general relief, will not be dismissed on the hearing for that reason, where the defendant has not demurred, but has answered without claiming the benefit of a demurrer, and both parties have introduced evidence upon the whole merits of the case, provided it states a case proper for any equitable relief, and the evidence supports the case so made.

*Bill to redeem.* A bill in equity which sets forth the facts upon which the equitable right to redeem mortgaged chattels after condition broken and possession taken by the mortgagee depends, and alleges that an amount stated was due on a day stated, and that complainant had offered to pay that amount, although it does not in so many express words offer to pay what may be found to be due upon the mortgage debt, contains all the substantial requisites of a bill to redeem where the question arises upon a hearing upon the evidence and merits without a demurrer.

*Bill in equity: Prayer for general relief.* Where a bill in equity, which does not make out a case for the specific relief prayed, but is sufficient as a bill to redeem, is not demurred to, the prayer for general relief will be treated as a prayer to be allowed to redeem.—*Schwarz v. Sears, Walk. Ch., 170.*

*Bill in equity: Prayer to be allowed to redeem.* The substantial meaning of a prayer to be allowed to redeem, in a bill in equity brought for that purpose, is to be allowed to redeem by paying whatever may be found due upon the mortgage; and it makes no difference in this regard that it is claimed in the bill that the whole debt has been paid, as this is always open to denial by the answer, and when so denied the question of the amount due is put in issue, and if any thing should be found due, the prayer must still, on the hearing, be construed as one to be allowed to redeem by paying what may thus be found due.

*Chattel mortgage: Bill to redeem: Mortgagee in possession.* A mortgagor of chattels may maintain a bill in equity to redeem after condition broken and after the mortgagee has taken possession, if brought within a reasonable time.

*Foreclosure of chattel mortgage.* Where a chattel mortgage provides specially how and upon what notice the mortgagee may sell, these express provisions preclude all implications upon the subject, and he cannot cut off the equitable right to redeem, if asserted in a reasonable time, by a sale in any other mode, except, perhaps, by sale to a *bona-fide* purchaser without notice of the mortgagor's equities.

24 MICH.—39.

FLANDERS *v.* CHAMBERLAIN.

*Promissory note: Interest: Stipulated damages: Penalty.* A provision in a promissory note drawing no interest if paid at maturity, for the payment of interest at ten per cent. from its date, if not paid at maturity, may be enforced where the note was given for property sold on these specific terms.

    Whether such a provision, in a note given for a precedent debt, would be treated as a penalty rather than stipulated damages for non-payment at the day :—*Quære ?*

*Tender : Award.* Where a tender was made upon a mortgage, of an award and a stated amount in money, and the amount in money, through an error in computation of interest, was too small, but the mortgagee supposed it to be correct and refused the tender, not on this ground, but because he claimed that he was not bound to receive the award, the fact of this deficiency in money will not prejudice the mortgagor when the award is held good on a bill to redeem.

*Award.* Where the answer to a bill to redeem on tender of an award as part payment, admits the submission, and that the parties mutually executed bonds to abide the award, and attacks its validity only on the ground that the arbitrators "*did not award in accordance with the submission;*" and the defendant in his testimony abandons this ground and claims it was invalid, because, after having heard part of the case, the arbitrators adjourned to a specified day or the first intervening rainy day, and then, without sufficient notice to him, met at an earlier day and made their award; and the evidence shows, not only that he had actual notice of the last meeting, but purposely disregarded it, and secretly undertook to induce one of the arbitrators to withdraw from the arbitration, the award will not, for such reasons, be held invalid.

*Award : Equitable offset to mortgage.* In the case of an award, providing for the payment of money by defendant to complainant, and for the delivery by complainant to defendant, at his premises, of thirty-three shoats "as specified in farm contract, etc.," it is held, under the circumstances of this case, that the provision for the payment of the money is independent of, and in no way affected by, the clause in reference to the shoats. That clause does not prevent the specific money award from constituting an equitable set-off to the mortgage debt.

*Award : Equitable offset to mortgage.* Upon a bill to redeem mortgaged chattels where the mortgage debt accrued in the purchase by complainant, from defendant, of farming implements and a horse and wagon to enable him to carry on a farm he had hired of defendant, and the evidence tended to show an understanding that a claim of complainant's against defendant for extra work done on the farm, repairs, lumber, etc., and for board of defendant and his family, and taking care of his stock, etc., should be turned on the mortgage debt, and that this claim was submitted to arbitration, the award thereon in complainant's favor constitutes a valid equitable offset to the mortgage.

*Bill to redeem : Decree : Mortgaged chattels : Conversion of by mortgagee.* A mortgagee of chattels under a mortgage containing a special power of sale, having taken possession of the chattels and converted them to his own use without sale, so that they cannot be redeemed in kind, the court holding the mortgagor entitled to redeem on his bill filed for that purpose, entered a personal decree against the mortgagee for the excess of the value of the property over the amount found due on the mortgage.

*Heard January 8. Decided April 3.*

Appeal in Chancery from Cass Circuit.

*Edward Bacon* and *Daniel Blackman,* for complainant.

*H. H. Coolidge & Son,* for defendant.

CHRISTIANCY, CH. J.

This case comes before us by appeal from the circuit court for Cass county, in chancery, where the bill was dismissed with costs.

The bill sets forth substantially that in February, 1868, complainant was employed to farm the land of defendant; that to enable him to carry on said farm, defendant sold him certain personal property and became surety for him by signing notes given to other persons for personal property bought of them; that the amount of both liabilities was about the sum of eight hundred and fifty dollars; that, in order to secure defendant the sums owing to him and those for which he was surety, complainant, on the 29th day of February, 1868, executed to him a chattel mortgage upon certain personal property, viz.: three-fifths of fifty acres of wheat put in by him on shares on said farm, two horses, half the wool on one hundred sheep on the farm, half of fifty store hogs on the farm, one lumber wagon and one set of double harness; that on the 10th day of November, 1868, there was due on said notes to said defendant about four hundred and forty-six dollars and sixty-six cents (which is claimed to be the whole amount then secured by the mortgage); that defendant at the same date was indebted to complainant upon an award dated November 5, 1868, in the sum of three hundred and sixty-five dollars and twenty-two cents, payable on the 10th of that month; that for the purpose of satisfying said chattel mortgage by the payment of said notes, complainant, on said 10th of November, tendered to defendant the said sum of three hundred and sixty-five dollars and twenty-two cents, by offering to offset the sum to that amount on said indebtedness, and offering him the balance then due on the mortgage in United

States legal tender treasury notes, which defendant refused to accept; claims that this tender discharged the lien of the mortgage; but avers that defendant, on the 20th of November, took and carried away the wagon, horses and harness mentioned in the mortgage, and secreted them, but gave complainant notice of his intention to sell the same; that on the 30th of November, defendant took possession of forty fat hogs (parcel of the fifty), and holds the same with the intention of selling them; avers that the value of the property so taken was eight hundred and fifteen dollars. It prays for an injunction, and that the lien of said mortgage may be decreed to be satisfied, and the defendant ordered to return the property; and that complainant "may have such other and such further relief as the nature of his case may require and as may be agreeable to equity and good conscience."

The defendant answers, admitting the mortgage as stated that the debts for which he had become surety had been paid by the complainant, and that the complainant's indebtedness to him was correctly stated in the bill, except that the note of two hundred and twenty dollars and fifty cents bears interest [which a reference to the note shows would make the sum claimed by the defendant to be due him seventeen dollars and forty-five cents more than stated in complainant's bill], and that on the 20th day of November there was due him on the mortgage four hundred and sixty or four hundred and seventy dollars; that there was also an obligation of the complainant to deliver to defendant thirty-three shoats, which would have been of the value of three hundred and fifty dollars; denies that on the 10th of November he was indebted to complainant in the sum of three hundred and sixty-five dollars and twenty-two cents, on an award payable to complainant; admits that they had undertaken to arbitrate their differ-

FLANDERS v. CHAMBERLAIN.

ences as to matters other than the mortgage, and that they each executed a bond to the other to abide the award; but avers that the arbitrators did not award in accordance with the submission, but that they did pretend to award that defendant should pay complainant three hundred and sixty-five dollars and twenty-two cents by the 10th of November, and further awarded that complainant should deliver to defendant thirty-three shoats as specified in farm contract; claims that the award is void, and further, that the matters submitted to the arbitrators were wholly disconnected with the debts secured by the mortgage; and that there never was any agreement that the award should apply upon the mortgage.

He admits that on the 10th November, complainant called on him and said he wanted to take up the mortgage; that defendant asked him if he had the money, to which he replied, "I have the award and the balance in money;" but did not deliver or attempt to deliver said shoats; and that defendant refused to receive the same in satisfaction of the mortgage; but how much money complainant had, or whether he had any, defendant is not informed; that defendant did not deem himself safe until the shoats were delivered, and was not disposed to trust him to deliver them at some future time, admits that, not deeming himself safe to leave the property longer in complainant's possession, he procured a constable to take the property; denies that it was concealed; says that he advertised it for sale, etc.; but it was not sold.

Evidence was taken by both parties, and the case was heard upon the merits; but the objection is taken by the defendant that the bill makes no case for equitable relief; but that it states a case for which, admitting it to be true, the complainant has a full, adequate and complete remedy at law, and that the bill ought to be dismissed on this ground.

It is undoubtedly true that a tender of the full amount due destroys the lien of a mortgage, and complainant, after such tender, might have brought his action of trover or replevin for the property. *Moynahan v. Moore, 9 Mich., 9 ; Caruthers v. Humphrey, 12 Mich., 270 ; Van Husan v. Kanouse, 13 Mich., 303 ;* and so far at least as it relates to the specific relief prayed by the bill, it might doubtless have been demurred to on this ground.

But, as the defendant, instead of demurring, saw fit to answer (and without claiming the benefit of a demurrer), and both parties have introduced evidence upon the whole merits of the case, and the bill contains the general prayer for such other or such further relief as the nature of the case may require; if it states substantially a case proper for any equitable relief which is within the equitable powers of the court to grant (*Bennett v. Nichols, 12 Mich., 22*) ; and if the evidence supports the case so made, the bill should not be dismissed on this ground.

If, therefore, upon principles recognized by courts of equity, the complainant had the equitable right to redeem the mortgaged property after the condition of the mortgage had become forfeited by non-payment at the day, and after defendant had taken possession of it under the mortgage— a question we shall presently consider—then this bill we think contains all the substantial requisites of a bill to redeem. It sets forth the facts upon which such right depends. And though it does not in so many express words offer to pay what may be found due upon the mortgage debt, it alleges that a certain amount was due on the 10th of November, and that complainant had offered to pay that amount, which, under the circumstances of the case, when the question arises upon a hearing upon the evidence and the merits, should be treated as a general allegation of an offer to pay what was due; and the

answer admits in so many words, the offer of complainant to pay the whole sum by applying the award and paying the balance in cash; and whether the award was such as would constitute a payment or offset thus far, would be a mere question of evidence, the allegation not being demurred to. And the complainant's general prayer for other and further relief must be treated as a prayer to be allowed to redeem, that being the appropriate and only equitable relief, if any, which the case would entitle him to. *Schwarz v. Sears, Walker's (Mich.), Ch. R., 170, and cases cited; Barton v. May, 3 Sandf. Ch., 450; Bartlett v. Fellows, 47 Me., 53.*

This then is a prayer to be allowed to redeem; and the substantial and only substantial meaning of such a prayer is to be allowed to redeem by paying whatever may be found due upon the mortgage. And it makes no difference in this respect that the complainant may claim by his bill to have already paid the whole,—as this is always open to denial by defendant; and when denied as in this case, the fact whether any thing, and how much, is due, is put in issue; and if any thing should be found due the prayer to be allowed to redeem must still, on a hearing, be construed as a prayer to be allowed to redeem by paying what may thus be found due.

The more important question is: Had complainant an equitable right to redeem after the breach of the condition of the mortgage by the failure to pay at the day, and after defendant had taken possession of the property under the mortgage?

We held in *Van Brunt v. Wakelee, 11 Mich., 177,* that notwithstanding the mortgage had become absolute by the breach of the condition to pay at the day, the mortgagor might maintain a bill to redeem at any time before foreclosure by sale, or taking possession by the mortgagee.

This was as far as the facts of that case required us to go to maintain the right of redemption; as, in that case, there had been no sale, and though the mortgagee came upon the plaintiff's premises and took possession, or claimed to do so, of the wheat in stack, he did not remove nor attempt to remove it. The point involved in the present case was therefore left undecided. But the principle upon which a bill for redemption is allowed at all, is one which applies as well after the mortgagee may have taken possession as before, if the bill be brought within a reasonable time.

In *Tannahill v. Tuttle, 3 Mich., 104,* it was held in accordance with the great weight of American authority, that by a mortgage of chattels the legal title passes to the mortgagee upon condition, and that, upon breach of the condition, the title becomes absolute at law, and that the mortgagee is entitled to the possession as general owner even before condition broken, unless the mortgage otherwise provide. It is true that neither of these conclusions was necessary to the decision of that case, as the mortgagee had there taken possession after condition broken, and was clearly entitled to hold it as against the defendant upon any theory of the nature of the mortgage; and the case must have been decided in the same way, had the mortgage been held, as I have always thought it should have been in analogy to mortgages of real estate here, to be a mere lien for the security of the debt. But as this case has so long been generally regarded as settling the nature of chattel mortgages in this state, it might be unwise now to disturb it, without legislation defining the nature of, and fixing the remedies upon, such mortgages. But the question of the right of redemption would not, as I concieve, be materially changed by the opposite theory of the nature of the mortgage.

By this case, however, a mortgage of chattels is placed upon precisely the same ground as a mortgage of real estate by the old common law; and it was to prevent the injustice and hardship to the mortgagor, whose estate was entirely forfeited and vested absolutely in the mortgagee at law (without reference to its value or the amount of the debt), that courts of equity stepped in to relieve the mortgagor, by allowing him a right in equity to redeem. This was the origin and the basis of the equitable right to redeem mortgaged real estate, or in other words, of the equity of redemption.—*2 Story's Eq. Jur.*, §§ *1311, 1012–1119.* Now the hardship and injustice of allowing the mortgagee to insist upon the forfeiture in the case of a mortgage of chattels is just as clear, and may often be equally shocking to all sense of justice, as in the case of the mortgage—or like conditional sale—of real estate. The principles of equity, therefore, upon which the right of redemption should be allowed are identical in both cases.—*2 Story's Eq. Jur.*, § *1031; Hinman v. Judson, 13 Barb., 629.*

Now, at common law, it is well known the mortgagee of real estate was entitled to the possession even before condition broken, as well as after. But his taking of the possession in no way cut off or interfered with the mortgagee's right to redeem, or to sustain a bill for redemption. And the mortgagee could only cut off that equitable right by bringing his bill in equity to bar or foreclose it. Such was the origin of bills of foreclosure.

Under the decision in *Tannahill v. Tuttle, 3 Mich., 104,* the mortgagee of chattels is also entitled to the possession even before condition broken, if he choose to take it, unless otherwise stipulated in the mortgage; and, though under that decision the property becomes absolute at law in the mortgagee by breach of the condition, yet manifestly, his mere taking of the possession of the chattels no

more cuts off the mortgagor's right of redemption, than the like taking of possession in the case of real estate, except that the mortgagor, because the property is of a transitory nature, must exercise his right, or bring his bill in a reasonable time. The mortgagee is not, however, as in the case of a mortgage of real estate, bound to file a bill in equity to foreclose the mortgagor's right of redemption; but may—and this is the main difference in the two cases—foreclose by his own act; by proceeding, after due notice—or if the mortgage itself provides for the notice and mode of sale, then by proceeding according to its terms— to sell the property (*2 Story's Eq. Jur.*, § *1031; Hinman v. Judson, 13 Barb., 629*); and in case of such sale, any surplus beyond the debt and costs or necessary expenses would, in equity, be held by him in trust for the mortgagor; and under the express provision of this mortgage, at least, in reference to the surplus, it might be recovered in an action of assumpsit.—*Hinman v. Judson, 13 Barb., 629, and authorities cited.*

The mortgage in the present case provided specially how, and upon what notice, the mortgagee might sell, viz: "At public auction after the like notice as is required by law for constables' sales," and the power was confined to "so much of the property as may be necessary to satisfy said debt, interest and reasonable expenses," and [the mortgagee was authorized] to retain the same out of the proceeds of such sale, the overplus or residue, if any, to belong and be returned to "the mortgagor."

These *express* provisions cut off all implications upon the same subjects, and the mortgagee could only sell so as to cut off the equitable right to redeem the property (if asserted in a reasonable time), by making the sale according to this express power. Though his title was absolute at law, he could not sell the property in any other mode so

as to preclude the mortgagor's right to follow the specific property and to redeem it, unless perhaps, when sold to a. *bona-fide* purchaser without notice of the mortgagor's equities.

This bill must therefore be sustained as a bill to redeem, if the evidence brings the· complainant's case within the principles above explained.

The mortgage, as already noticed, refers to no notes, but is given to secure the payment of the gross sum of eight hundred and fifty dollars, payable on or before the first day of October, 1868 ; though it is shown by the evidence that it was given to secure the same indebtedness included in three notes executed subsequent to the mortgage (as. well as the amount for which defendant had become surety, and which had been paid before any controversy arose).

Two of the notes were dated back to the first of' December, 1867 ; one for one hundred and ten dollars, payable ten months after date (Oct. 1, 1868), with interest at ten per cent., given for one of the horses mortgaged, bought in November or December, 1867 ; one note of two· hundred and twenty dollars and fifty cents, payable by the 15th of September, 1868, interest at ten per cent. from date, *if not paid when due.* This was given for farming tools bought of defendant in November, 1867, and the third note for one hundred and seven dollars, dated March 16, 1868, payable by the first day of January, 1869, without interest, given for a wagon bought of defendant in February, 1868. The first note, therefore, became due at the same date as the mortgage ; the second, fifteen days before, and the last note three months after the mortgage, and was not due until about one month and ten days after the property was taken by defendant on the mortgage, which, however, gave the right to sell for the amount of all the notes, though one was not yet due. But all the

notes were given for property wanted for, and used by complainant in, carrying on defendant's farm.

There was some dispute upon the argument as to the amount actually due or unpaid on these notes, on the 10th of November, when complainant sought to redeem, the complainant having, as he testifies, offered defendant the award of three hundred and sixty-five dollars and twenty-two cents, and a roll of legal tender treasury notes of ninety dollars, making four hundred and fifty-five dollars and twenty-two cents, which was more than the amount of the mortgage if the note of two hundred and twenty dollars and fifty cents did not bear interest from date, but less by fourteen dollars and forty-two cents than the amount due upon the mortgage, if the note is to draw interest at ten per cent. from date. As this note shows upon its face, that it was to draw no interest before maturity, if then paid, it is claimed that this is in the nature of a penalty; and in an ordinary case, when a note is given for a precedent debt, I am strongly inclined to think such a provision for interest from date, at ten per cent., if not paid when due, ought to be treated as a penalty rather than stipulated damages, for non-payment at the day. But it is shown that this note was given for property sold on these specific terms, such being the condition of the sale; and undoubtedly a vendor has a right to refuse to sell except upon this or any other condition; and such being the condition of the sale in pursuance of which the note was given, I think it must draw interest from date at the rate mentioned. Complainant, as is evident from his testimony, was under the impression, when he undertook to make the tender, and when he testified, that the note did not call for interest until after due, and for this reason the amount of bills which he had in the roll offered to

defendant, was merely this difference of interest less than was then due.

But we do not think this material to complainant's right to redeem in this case. Complainant, it is true, testifies that he offered defendant the award and the ninety dollars in greenbacks, which he had in his hand; but it is clear from the testimony of the witness Young, that the bills were in a roll in defendant's hand and were not unrolled, nor does it appear that the amount of the bills was stated. The defendant himself testifies (and this is exactly in accordance with his answer), that on the 10th of November complainant came to him, " and said he wanted to take up the mortgage and notes. I asked him if he had the money; he said he had the award and the balance in money. · I told him I did not recognize the award; I would not take it. * * I did not see any money; he had something in his hand rolled up. I did not examine it, neither did he; so that I cannot tell what it was." This, as well as his answer, shows that he dispensed with any tender of the difference between the amount of the award and the amount he claimed due on the mortgage. It shows that he supposed the sum offered by complainant to be that balance, and that he refused the offer, not because the amount tendered in money with the award, was insufficient, but because he peremptorily refused to receive the award at all, in reduction of the mortgage. Had he been willing to take the actual balance in money, there would, of course, have been a calculation made from the notes, which would have informed complainant of his error, and he could then have tendered the balance, which he may have had in his pocket, and if he had not, he would have had the opportunity to procure it.

It is objected by the defendant that he was not bound to receive the award in reduction of the mortgage debt; *first,* because it was not a valid and binding award; *second,*

because complainant had not performed his part of the award, and *third*, if valid between the parties, it does not constitute an equitable offset.

As to the validity of the award, the answer admits the submission to the arbitrators, and that the parties mutually executed bonds to abide the award; and the only ground upon which the answer objects to its validity is, that the arbitrators "did not award in accordance with the submission." It specifies no point in which the award departs from, or fails to comply with, the submission, and the particular terms of the submission are not shown. In his testimony defendant does not pretend to claim that the award was not valid because not in accordance with the submission, but apparently abandoning this ground of objection, he claims that it was invalid, because, after having heard a part of the case, the arbitrators adjourned the further hearing to a particular future day, or to the first rainy day that should occur; and then, without notice, or sufficient notice to him, met at an earlier day and made their award. This is a ground entirely new and distinct from that claimed by the answer; and the evidence shows, not only that the defendant had actual notice of the last meeting, but that he purposely disregarded it, and secretly undertook to induce one of the arbitrators to withdraw from the arbitration, who, thinking he had no right to do so, was advised by defendant to go and take counsel upon it, defendant offering him "two prices" if he would do so. The award is not, therefore, invalid on those grounds. But it is urged that the award was not only for the payment of three hundred and sixty-five dollars and twenty-two cents by the 10th of November, but that complainant should deliver to defendant, at his premises, thirty-three shoats, "as specified in farm contract," executed by said Flanders and Chamberlain the first day of September, 1867, "to be delivered on or before the first day

of December next." This was an obligation of complainant, then, which had not become due by the contract, at the time of the submission, or the award. We have not the agreement of submission, or the bonds of the parties to abide the award, before us; but we have the mutual claims actually submitted, every item of which consists of demands claimed to be already due, and the sum claimed carried out opposite each item, except only that among the claims of the defendant submitted, is this: "Twenty shoats to be returned;" no sum being carried out. How this came to be thirty-three in the award we are not informed, but it was probably an error. It is not, however, difficult to see from the language of the award that, as by the contract for the delivery of the shoats (whatever the number), the defendant was not bound to deliver them before the first of December, and his obligation, therefore, was not till then due, the arbitrators intended to leave that obligation to rest upon the contract which created it, and which, for this purpose, was to be left in full force, and that the meaning is, that the award should not be so construed as to merge or extinguish it.

The award, therefore, of the three hundred and sixty-five dollars and twenty-two cents, payable on the 10th of November, is entirely independent of, and in no way affected by, the clause in reference to the shoats; and no attempt was made by the defendant to prove the value of the shoats. This provision of the award does not, therefore, prevent the specific, money award from constituting an equitable set-off to the mortgage debt, if it be in other respects admissible as such.

Now, in view of the facts that the complainant hired the defendant's farm in September, 1867; that the mortgage debt accrued in the purchase by complainant from defendant of farming implements and a horse and wagon to enable him to carry on the farm; and that the items of the

complainant's claim before the arbitrators, and upon which their award was founded, consisted mostly in extra work done upon the farm, repairs, lumber, etc., and in part for board of the defendant and his family, taking care of his stock, etc., we think the parties must naturally have looked upon the mortgage debt on the one side, and the various items upon which the award was founded on the other, in the light of mutual credits, each trusting to liquidate the debt due from himself by that due from the other so far as the one might balance the other. Complainant testifies that there was an understanding that his extra work, etc., should be turned on his indebtedness to defendant. Defendant denies that there was any understanding that the work should apply "*in payment* of those *notes* and the *mortgage;*" but he does not pretend that he had ever offered to pay for the work, or that there was any understanding that it should be paid in any other way. Complainant's testimony is much more consistent with the circumstances and nature of the case, and we think, therefore, most likely to be true.

We are, therefore, of the opinion that this money award properly constituted a valid, equitable offset to the mortgage debt on the 10th of November, 1868, when complainant requested its allowance in reduction of that debt.

The whole amount of the mortgage debt on the 10th day of November, 1868, allowing interest on the two notes which drew interest, according to their terms, to that date, including the amount of the last note without interest, and which was not yet due, was four hundred and sixty-nine dollars and sixty-four cents. Deducting from this the amount of the award, three hundred and sixty-five dollars and twenty-two cents, leaves one hundred and four dollars and forty-two cents. Deduct discount on one-hundred-and-seven-dollar note without interest, until January 1, 1869,

one dollar and three cents; balance due November 10, 1868, one hundred and three dollars and thirty-nine cents. The complainant is entitled to redeem by paying this balance, and interest from November 10, 1868. For this small balance (which he admits complainant offered to pay him in cash), defendant took, and has appropriated to his own use, the following property covered by the mortgage, and the value of which, after a careful consideration of the evidence, we find to be as stated below, viz: The span of horses, wagon and harness, worth at the time three hundred and ninety dollars, and the half of forty fat hogs, average weight, three hundred pounds—twelve thousand pounds—complainant's half, six thousand pounds, worth seven cents per pound, four hundred and twenty dollars; total, eight hundred and ten dollars.

Considering the nature of this property, the time which has elapsed since the bill was filed, and the fact that it has been converted by the defendant to his own use, it cannot now be redeemed in kind; and a mere decree for the redemption of the property itself would be nugatory. The defendant must, therefore, in lieu of the property, make compensation for its value. The decree below must, therefore, be reversed, and a decree of this court entered in favor of complainant for seven hundred and six dollars and sixty-one cents, with interest from the 10th day of November, 1868, that being the difference between the value of the property and the balance due on the mortgage debt at that date; and the decree must be without prejudice to the defendant's right to any remedy he may have at law against complainant in reference to the shoats referred to in the award and in the farm contract. Had the defendant seen fit to prove the contract referred to and the value of the shoats, he might, perhaps, have been entitled to have that amount deducted

24 MICH.—41.

from, the above balance against him; but as he did not attempt to do so it is unnecessary to discuss that question.

As the conduct of the defendant has been oppressive, complainant must recover costs in both courts.

The other Justices concurred.