## JAMES MORTON v. THE SOLAMBO COPPER MINING COMPANY.

MINING USAGES AND CUSTOMS.—Where any local mining customs exist, controversies affecting a mining right must be solved and determined by the customs and usages of the bar or diggings embracing the claim to which such right is asserted or denied, whether such customs and usages are written or unwritten.

NOTICE LOCATING CLAIM UNDER MINING CUSTOMS CANNOT BE CHANGED.—If a mining custom allows a person to locate a lode or vein for himself and others, by placing thereon a notice, with his own name and the names of those whom he may choose to associate with him, appended thereto, designating the extent of his claim; and one person thus locates a lode for himself and several others, some of whom have no knowledge of the location, the persons who have no knowledge of the location by the same become tenants in common with the locator and the others, and cannot be divested of their interest by the locators afterwards tearing down the notice and posting up another omitting their names, unless this is done with their knowledge and consent.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp*, for Appellants.

A mere mining usage, not established or sustained by a mining written rule, cannot have the force of law so as to vest property.

There was no proof that by the unwritten custom or usage the *effect* of simply placing a name upon a notice was to vest property in the person bearing that name; in the absence of such proof it was error to give such effect to the writing of the *name* only.

The unwritten custom or usage proven, required expressly,

*in order to vest property or acquire a right,* that there must be a compliance with the condition of then "entering upon and working such vein or lode."

There was no proof as to what power the locator had over names used by him. Upon principle, if he could *insert* a name in a notice, surely he must have the power to *erase* it. *Quoad* the notice, he is *dominus rerum.* Especially could he erase the names of Vigoreux and Reviere, for he inserted them *without authority.* (*Anderson* v. *Coonley,* 21 Wend. 279; Story on Agency, 126, 127.)

There was *no acceptance* by Amy, Vigoreux, or Reviere.

Until *acceptance* and *consent* of the person whose name is used, such person does not acquire property. (*Hannah* v. *Swarner,* 8 Wats. 11.) Mutual consent is necessary to a gift even. (2 Kent. 438.)

Amy acquired *no title;* because, though any acceptance would be a compliance with *common law* rule, yet the unwritten usage relied on by respondent, required him (by himself or by another) to *enter and work,* as the *sole evidence* of acceptance.

Vigoreux and Reviere did not accept, even by parol, and no presumption of their intention to accept can arise, especially when the right is acquired only by compliance with the onerous condition of entering and working.

The proof showed that they had no knowledge, even, of their names being thus used, and the whole thing was without any authority from them. Neither on the principles of agency, nor of grant, can Vigoreux and Reviere be held to have acquired anything.

This case differs from that of *Gore* v. *McBrayer,* 18 Cal. 585, for Gore authorized McBrayer to locate for him; here, Vigoreux and Reviere gave no authority to Dejon, and there was no proof of ratification by their adopting or in any manner recognizing the act of Dejon before the right of these defendants attached.

*H. P. Barber,* for Respondent.

The right to a mining claim vests by taking, in accordance with local rules, and the custom of miners in such cases is entitled to great if not controlling weight. (*McGarity* v. *Byington*, 12 Cal. 431; *Brown* v. *Forty-Nine Quartz M. Co.*, 15 Cal. 161.)

The placing of the names of plaintiffs (or their grantors) upon the notice by Dejon, together with his own, and his entry upon and working the mine, gave all parties whose names were so placed on said notice, a *vested interest* as tenants in common therein, and no act of Dejon could subsequently affect their interest.  This principle is expressly recognized in *Gore* v. *McBrayer*, 18 Cal. 582, 587.

The placing of their names on the notice gave plaintiff a *vested right* under the mining rules, and until they rejected or abandoned it (which of course they could not do before knowledge of the fact) their co-tenants could not divest them of their rights.

The fact that Dejon was the discoverer, and placed these names up, gave him no superior right to any other co-tenant. It was not in the nature of a gift, which might be revoked before actual delivery, (even if placing the names on the notice were not in fact a *quasi* delivery of seizin,) because Dejon had not a foot of ground to *give* them.  His power was derived *solely* from the mining usages of the vicinity, and after he had once publicly chosen his associates in the manner prescribed by those usages, the *power* under which he acted became extinct.

The action of Dejon in erasing these names and substituting others, was fraudulent, and therefore void. (*Sanford* v. *Head*, 5 Cal. 298; *Clark* v. *Underwood*, 17 Barb. 202.)

Appellant contends that a mere mining usage, unless sustained by a *written rule*, cannot vest property.  The Practice Act (Sec. 621) provides that in mining cases the *customs, rules and regulations*, shall govern the decision of the action. (See, also, *Gore* v. *McBrayer*, 18 Cal. 582.)

Appellant contends that it was necessary for *plaintiff himself* to work the claim.

It was sufficient if Dejon, the discoverer, plaintiff's co-tenant, worked the common claim, and the record is express as to this point. The possession and working by one co-tenant is a possession and working by all. (*Waring* v. *Crow*, 11 Cal. 371.)

By the Court, SANDERSON, C. J.

This action was brought to recover an undivided interest in a copper mining claim called the Solambo Claim. The plaintiff recovered judgment in the Court below and the defendant appealed. The case comes before us upon the following statement:

" On the trial it was proven that at the time of the location of the Solambo Claim the mining customs, usages and regulations in force in the mining district where said claim is located (there being no written mining laws) adopted and in use in locating such claims were: That the discoverer placed up a notice on the vein or lode, claiming the same for himself and such persons as he thought proper to place with him on the notice, in the proportion of three hundred feet for the discoverer and one hundred and fifty feet for each of the parties so associated with him on said notice, and then entering upon and working such vein or lode. That on or about the 26th day of January, 1863, Joseph Dejon, the discoverer of said lode, in accordance with said mining customs, usages and regulations, located a copper vein or lode, placing thereon the following notice:

" ' No. 1—Discovery Claim, Solambo Lead.—We, the undersigned, claim three thousand nine hundred feet in this copper lode, running one thousand nine hundred feet northwest and one thousand nine hundred and fifty feet southeast from this notice, with all dips, angles and spurs, the lode being three thousand and nine hundred feet in length, and five hundred feet on each side of the lode.'

" To this notice, Joseph Dejon, the discoverer, appended his own name, with sufficient other names to make up the amount claimed in parcels of one hundred and fifty feet each, and afterward placed said notice, so containing said names, on the lode, entered, took possession of, and worked the same. Among the names so placed by Joseph Dejon on said notice, were those of Victor Amy, Joseph Vigoreux and Victor Reviere, grantors of the plaintiff, and comprising three shares of one hundred and fifty feet each, or four hundred and fifty in all.

" The name of Victor Amy was placed on said notice by his permission and consent. The names of the other parties were placed upon said notice without their knowledge, and Dejon had no authority to use their names from any of them except Victor Amy.

" After the claim had been so located by said Dejon, and said notice had remained thereon a few days, and before the aforesaid parties, except Victor Amy, knew that their names were on said notice, Joseph Dejon took down and destroyed said original notice, and placed up another, claiming the same ground, but omitting the names of all the foregoing parties and substituting others in their stead.

" The parties so substituted transferred their alleged interest to defendant, who took exclusive possession, refusing to permit said parties above named whose names were first placed on the notice by Dejon to enter upon the claim or to recognize them as having any right therein.

" Said first named parties transferred their respective interests to plaintiff. On the trial the Court charged the jury as follows : ' That if they believed from the evidence that Dejon was the discoverer of the lode in question, and had located the same in accordance with the mining customs of the district, by placing upon said lode a notice such as had been given in evidence, and containing the names of plaintiff's grantors thereon, and had entered upon and worked the same thereunder, such location and entry in point of law, gave said parties, whose names were so placed on said notice, a vested right as tenants in common in said lode, and said Dejon had no right

afterward, without their knowledge or consent, to tear down the first notice and place up another omitting their names. That such conduct on his part did not destroy any right they acquired by the mining customs under said location, and that unless it was shown that such alteration was made with the knowledge or consent of said parties, it could not affect their rights; and they would be entitled to recover to the extent of their respective interests.'

" To this instruction defendant's counsel then and there excepted, and now assign the same as error."

The six hundred and twenty-first section of the Practice Act provides that: " In actions respecting 'mining claims' proof shall be admitted of the customs, usages or regulations established and in force at the bar or diggings embracing such claims; and such customs, usages or regulations, when not in conflict with the Constitution and laws of this State, shall govern the decision of the action."

At the time the foregoing became a part of the law of the land there had sprung up throughout the mining regions of the State local customs and usages by which persons engaged in mining pursuits were governed in the acquisition, use, forfeiture or loss of mining ground. (We do not here use the word forfeiture in its common law sense, but in its mining law sense as used and understood by the miners who are the framers of our mining codes.) These customs differed in different localities and varied to a greater or less extent according to the character of the mines. They prescribed the acts by which the right to mine a particular piece of ground could be secured and its use and enjoyment continued and preserved and by what non-action on the part of the appropriator such right should become forfeited or lost and the ground become, as at first, *publici juris* and open to the appropriation of the next comer. They were few, plain and simple, and well understood by those with whom they originated. They were well adapted to secure the end designed to be accomplished, and were adequate to the judicial determination of all contro-

versies touching mining rights.    And it was a wise policy on the part of the Legislature not only not to supplant them by legislative enactments, but on the contrary to give them the additional weight of a legislative sanction.    These usages and customs were the fruit of the times, and demanded by the necessities of communities who, though living under the common law, could find therein no clear and well defined rules for their guidance applicable to the new conditions by which they were surrounded, but were forced to depend upon remote analogies of doubtful application and unsatisfactory results. Having received the sanction of the Legislature, they have become as much a part of the law of the land as the common law itself, which was not adopted in a more solemn form. And it is to be regretted that the wisdom of the Legislature in thus leaving mining controversies to the arbitrament of mining laws has not always been seconded by the Courts and the legal profession, who seem to have been too long tied down to the treadmill of the common law to readily escape its thraldom while engaged in the solution of a mining controversy. These customs and usages have, in progress of time, become more general and uniform, and in their leading features are now the same throughout the mining regions of the State, and however it may have been heretofore, there is no reason why Judges or lawyers should wander, with counsel for the appellant in this case, back to the time when Abraham dug his well, or explore with them the law of agency or the Statute of Frauds in order to solve a simple question affecting a mining right, for a more convenient and equally legal solution can be found nearer home, in the "customs and usages of the bar or diggings embracing the claim" to which such right is asserted or denied.

The only question for us to determine in the present case is whether the instruction of the Court contains a correct exposition of the mining rule or custom under which the Solambo Claim was located, for that custom contains all the law applicable to the question before us, and by it the question is to be solved, whether the custom is written or unwritten, without

any reference to the Statute of Frauds, or the law of agency, except as declared in the custom itself.

The custom provides that any person who has discovered a vein or lode and desires to locate a mining claim upon it for himself, or for himself and others, may do so by putting up a notice, with his own name and the names of those whom he may choose to associate with him appended thereto, to that effect, designating the extent of his claim, which may amount to three hundred feet for himself and one hundred and fifty feet for each of his associates. Thus the law itself makes the discoverer the agent of those for whom he chooses to act, and makes his act their act regardless of the fact whether they have any knowledge of it or not. The discoverer can only locate three hundred feet for himself; and if he locates more he can only do so as the agent of another; and having located for another his power as agent ceases, for beyond the act of location the custom does not authorize him to proceed as agent, and he can thereafter make no change without power to do so from the person whose name he has so used. The act of location being accomplished in the manner designated, the discoverer becomes vested with a mining right to the extent of an undivided three hundred feet and no more, and each of his associates with an undivided one hundred and fifty feet, and thereafter they hold the claim as tenants in common, provided that the discoverer or some of them enter upon and work the same. It follows that the instruction was correct, and the judgment must be affirmed.

We cannot leave this case without commending the manner in which the statement has been prepared. It is a good example of what every statement ought to be, and we have copied it into this opinion in part for the purpose of calling the attention of the profession to it. We have copied the entire statement except the authentication. By adopting the course taken in the preparation of this statement, instead of inserting the testimony bodily, as many do, much useless labor will be saved to the Court and counsel, and much expense to litigants.

Judgment affirmed.