EVERETT v. BUCHANAN.

1. CLAIM AND DELIVERY: ALLEGATIONS OF COMPLAINT: SUFFICIENT. A complaint, in an action of claim and delivery, which alleged a special property as lessee, of part of the property, and absolute ownership of the rest, in plaintiff; that he is entitled to immediate possession; that one C. wrongfully took said

property from possession of plaintiff, and thereafter said property, with notice of plaintiff's rights, came into defendant's possession, who unjustly detains the same; demand therefor and refusal by defendant: *Held,* sufficient on demurrer.

2. PLEADING: UNLAWFUL DETENTION. It is not absolutely necessary to state in the complaint the facts which show that the detention is unlawful; they may be given in evidence on trial.

3. MOTION: AFFIDAVIT USED ON: SUFFICIENCY, HOW REVIEWED. An affidavit used upon a motion in the court below can be reviewed here as to its sufficiency, only when it has been made a part of the record by being incorporated in a bill of exceptions duly settled.

4. GENERAL AND SPECIAL FINDINGS: JUDGMENT ON. Where, with a general denial and a further separate defense in the answer, the jury returned a general verdict for plaintiff, and a special verdict finding the facts alleged as a separate defense in the answer; the facts so alleged and specially found constituting an insufficient defense to the action: *Held,* that judgment for plaintiff was properly entered.

5. CHATTEL MORTGAGE: CONVERSION OF PROPERTY: FORFEITS, LIEN OF. Where a mortgagee of personal property took possession thereof for the purposes of foreclosure, and contrary to the provisions of the mortgage, sold such property at private sale: *Held,* a wrongful conversion of the property which extinguished the mortgage lien.

6. PURCHASER AT PRIVATE SALE. One who purchased mortgaged property at such private sale, with notice actual and constructive of plaintiff's rights and the mortgagee's interest in the property, acquired no title to or lien upon such property.

*Appeal from the District Court of Minnehaha County.*

THE facts are fully stated in the opinion of the Court.

*M. Grigsby,* for appellant.

*R. F. Pettigrew, Moody & Smith,* for respondent.     No briefs filed.

KIDDER, J.—Numerous assignments of error were made by the appellant, but upon the argument all were abandoned save these three:

1.   The Court erred in overruling defendant's demurrer.

2.   The Court erred in overruling defendant's motion for a continuance.

3. The Court erred in refusing to enter judgment in accordance with the special verdict.

We shall proceed to examine these alleged errors in the order in which they are assigned.

The allegations of the complaint, to which the demurrer was directed, are as follows:

1. "That at the time hereinafter mentioned the plaintiff was lawfully possessed of * * * * * then and ever since his property.

2. "That the plaintiff's right to the possession and title in said ink roller * * * * is that he is the absolute owner of the same. That he is entitled to the possession of said two printing presses * * * * by virtue of a lease from John McClellan to this plaintiff, a copy of which lease is hereto annexed * * * and made a part of this complaint," etc.

The complaint then alleges that on the 16th day of February, 1877, one Henry Callender wrongfully took said property from the possession of the plaintiff, and that thereafter the same came to the possession of the defendant who unjustly detains the same; that on the 7th day of March, 1877, prior to the commencement of the action, plaintiff made a demand therefor, that defendant refused to deliver said property to the plaintiff and still unjustly detains the same.

The complaint also states that the lease therein mentioned was duly filed in the register of deed's office of the county in which the property was situated, prior to said 16th day of February.

The defendant's demurrer was overruled by the Court. The defendant then filed his answer and went to trial on the issues thus joined. The complaint states but a single cause of action, and the defendant, by answering, has waived his right to insist upon the alleged error in overruling the demurrer, except as to two grounds, viz: 1. An objection to the jurisdiction of the Court. 2. That the complaint does not state facts sufficient to constitute a cause of action. (Code of Civil Procedure, § 117.)

The latter is relied upon by the appellant. The evidence is not before us. No objection appears to have been taken to the verdict of the jury upon the ground of insufficiency of the evidence, and

we are not to be understood as deciding at this time, how far such error as is alleged here may have been cured by the verdict.

In view of the conclusion we have arrived at upon the question of the sufficiency of the complaint, an examination of this question of practice would not change the result.

The complaint alleges possession by the plaintiff, ownership as to part, and special property as to the rest of the property therein described; a wrongful seizure thereof by one Henry Callender on the 16th day of February, 1877; that thereafter the property came to the possession of the defendant, who, after demand by plaintiff, still unjustly detains the same from the plaintiff. The complaint clearly states facts sufficient to constitute a cause of action.

Lawful possession of property, and a tortious taking, or wrongful detention thereof after demand, are sufficient to maintain this action. (*Kuhland v. Sedwick*, 17 Cal., 123.) In that case the complaint alleged that on a certain day, " the plaintiff was the owner and in possession of certain personal property * * * * of the value of $1,000; and that on the same day the defendant seized upon and converted the same to his own use."

The Court held the complaint sufficient, and say: "There is not even the pretense of an issue on this allegation, (that of the plaintiff's possession,) except conjunctively with that of ownership. Each of these allegations is sufficient to sustain the complaint, and an issue presented by a conjunctive denial must be regarded as immaterial and irrelevant"

The demurrer admits the general and special property in the plaintiff, his possession, the demand for a return of the property, and its detention by the defendant.

In an action of *claim* and *delivery* under the Code, the complaint may be in the form of the old declaration in replevin in the *detinet*. It is not absolutely necessary to state in the complaint the particular facts which show that the detention is unlawful; they may be given in evidence on trial, although under the Code we should regard it as better pleading to state such facts. (*Bliss v. Cottle*, 32 Barb., 322; *Hunter v. Hudson River Iron Machine Co.*, 20 Barb., 493; *McLaughlin v. Piatti*, 27 Cal., 464.)

The second error relied upon by the appellant is the refusal to

grant a continuance.   The affidavit for a continuance upon which the application was made, has not been made in any proper manner a part of the record in this case.    An affidavit used upon a motion in the court below can be reviewed here as to its sufficiency, only when it has been made a part of the record in this court by being incorporated into, or made a part of the bill of exceptions duly settled, as provided by section 280 of the Code of Civil Procedure.    We find in the transcript what purports to be an affidavit and motion for a continuance ; but nothing appears anywhere in the record to show what disposition was made of such motion, except we find therein what is called, " Minutes of the Court," in which is the following statement:   "May 30, 1877.    Motion for postponement denied and defendant excepts."   This is not a bill of exceptions.   It lacks the settlement of the point and the signature of the Judge.    It is in reality nothing more than a memorandum kept by the clerk, which is no part of the record in a cause.    Vide generally, *Gordon v. Clark,* 22 Cal., 534 ; *Stone v. Stone,* 17 id., 513 ; *People v. Hanshell,* 10 id., 83 ; *Gates v. Buckingham,* 4 id., 268 ; *Ritter v. Mason,* 11 id., 214 ; *Moore v. Temple,* 11 id., 360.

We will now proceed to the consideration of the third assignment of error.    Upon the trial the jury returned a general verdict for the plaintiff upon all the issues, the value of the property and damages for its detention.    And a special verdict, as follows :   " 1. That Henry Callender did, as the agent of I. M. Hay and by virtue of the chattel mortgage, take possession of the property described in the complaint on the 16th of February, 1877.   2.  That the defendant did purchase at private sale from I. M. Hay, through M. Grigsby, his agent, the property described in the chattel mortgage, on the 21st day of February, 1877.   3.   That the property described in the complaint, was not, on the 16th of February, by Henry Callender acting as an agent of I. M. Hay, placed under the charge of the defendant, but of John McClellan.   Upon these facts the jury find as above."

The evidence submitted to the jury is not before us.   The answer sets up, *first,* a general denial, except as thereinafter specially admitted ; and, *second,* as a further and separate defense, that on the 26th day of January, 1876, said McClellan was the owner of the property in dispute and in possession thereof ; and on that day

executed to J. D. Cameron & Co. a chattel mortgage thereon which was duly filed in the register of deed's office on that day; that on the 3d day of July, 1876, said Cameron & Co. assigned said chattel mortgage to I. M. Hay; that on or about the 19th day of February, 1877, the said Hay took possession of the property by virtue of the mortgage, which contained a power of sale, for the purpose of foreclosing, and did foreclose the same by selling the property at *private sale* to the defendant on or about the 21st day the same February; that the property was delivered to the defendant by reason of the said purchase, and that he became thereby, and ever since has been the legal owner thereof.

The counsel for the appellant insist that the general verdict, upon which judgment was entered for the plaintiff, is in direct conflict with the special findings of the jury, and that judgment should have been entered for the defendant upon the special verdict.

This question is fairly before the court. The appeal is from the judgment, and upon such appeal the court will review any errors apparent upon the face of the judgment roll proper. (*Wetherbee v. Carroll*, 33 Cal., 549; *Am. Riv. Wat. & Min. Co. v. Bear Riv. Wat. & Min. Co.*, 11 Cal., 340; *McGill v. Rainaldi*, id., 391; *Newberry v. Hanson*, 12 id., 280.)

The verdicts, both general and special, are a part of the judgment roll. (Code of Civil Procedure, § 299.)

Where a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly. (Id., § 261.)

The question to be determined, then, is this: Are the special facts found by the jury, *in their legal effect, as the record stands,* inconsistent with the general verdict for the plaintiff upon all the issues?

In other words, admitting the facts to be as found by the special verdict and as disclosed by the record, is not the plaintiff entitled to a judgment for a return of the property?

The conclusions of fact presented by the special verdict should be so full, clear and explicit that nothing may remain to the court but to draw from them conclusions of law. (Id., § 260.)

Without stopping to comment upon this provision of the Code as to its bearing upon this case, and without laying down any rule of practice upon this point, we may here say, that for the present case and the purposes of the question we are considering, the general verdict settles all disputed facts not passed upon in the special findings.

The general denial in the defendant's answer puts in issue all the allegations of the complaint, except such as are admitted.

The special findings are in response only to the special facts alleged in the answer, and do not refer in any manner to any of the facts alleged in the complaint, except one, viz: that Henry Callender, on the 16th day of February, 1877, took possession of the property, and this fact, thus far, is found for the plaintiff. Taking, then, together the admissions in the answer, of facts bearing upon the question, and the general verdict for the plaintiff, we may consider all the facts alleged in the complaint as true, and not in conflict with the special findings, except as to the legal conclusions drawn therefrom by counsel.

The facts disclosed by the record, and to which we are asked to apply the rule of law, may be stated briefly as follows:

1. On the 26th day of January, 1876, John McClellan owned certain personal property, which on that day he mortgaged for the term of one year, the mortgage being duly filed in the office of the register of deeds the same day.

2. That on the 27th day of January, 1876, the said McClellan leased the same property to the plaintiff for the term of eighteen months, the lease being duly filed in the said office of the register prior to the 16th day of February, 1877, and delivered the possession of said property to him, the plaintiff, under said lease.

3. That on the said 16th day of February, I. M. Hay, the assignee and then owner of said mortgage, caused the said property to be taken from the possession of the plaintiff by virtue of said mortgage for the purpose of foreclosing the same, and placed the property under the charge of the mortgagor, McClellan.

4. That on the 21st day of the same February, the said Hay, holding possession of said property by virtue of said mortgage, sold the same *at private sale* to the defendant, who purchased it

well knowing all these facts, and claims in his answer to be the owner thereof by virtue of said purchase.

Upon the argument the claim of absolute ownership was practically abandoned by the counsel for the appellant. But it was urged with much zeal, that, although the sale of the property by the mortgagee at private sale to the defendant may have been irregular, yet it would operate as *an assignment* of the mortgage; and the purchaser, Buchanan, could hold the mortgaged property until the mortgage debt was paid or tendered; that if the plaintiff as such lessee had any interest whatever in the property it was merely the right of one holding an inferior lien, and would only give him the right to regain the possession of the property by paying or tendering the mortgage debt.

In support of this view we are referred to the case of *Irwin v. Briggs*, 31 Mich., 444.

Aside from the provisions of our Code, hereinafter referred to—no similar provision being found in the Statutes of Michigan—we do not regard this case as being, by any means, decisive of the question presented herein.

In that case the firm of Beebee & Taylor, merchants, mortgaged to Tillou a stock of goods. Upon default in the mortgage, the mortgagee, Tillou, with the *consent of the mortgagors*, took possession of the property under the mortgage; and while thus in possession, Taylor, one of the firm of Beebee & Taylor, executed a bill of sale of the stock to the mortgagee, in the name of the firm, he agreeing in consideration thereof to release the mortgage debt and pay a $1,000 on the remaining debts of the firm. The mortgagee thereupon sold the stock to the defendant Briggs. Other creditors then levied an execution upon the stock in Brigg's possession.

The Court says: " Whether that instrument (the bill of sale by Taylor) was valid or not, Tillou, as mortgagee, had lawful possession, and when he sold to Briggs he at least transferred all his rights as mortgagee, and this would entitle the latter to take and retain possession until the mortgage debt was paid or tendered. The *mortgagors* could not take from him a possession they had *voluntarily* surrendered to his assignor." * * * The court ex-

pressly refuses to decide whether the execution creditors stood in any better position than the mortgagors, passing that question by holding that the levy of the execution was defectively made.

Besides the two points suggested, this case contains one very important element not found in the case at bar, viz: the *consent of the mortgagor.* The facts in that case show an *actual consent* to the taking possession by the mortgagee, and an *implied* consent to the sale of the property to Briggs. The right of the mortgagors to consent to such sale cannot be questioned.

The record in this case no where discloses any *consent* of either the mortgagor or his lessee, the plaintiff, to the private sale of the property by Hay to the defendant, Buchanan. It is not even alleged in defendant's answer.

But in this case, if the consent of the mortgagor, McClellan, was clearly shown, we could not regard it as of any particular importance. The mortgagor could only consent to a sale of such interest as he then had in the mortgaged property. He had transferred to the plaintiff, long prior to that, a valid and subsisting lease-hold estate in the mortgaged property. The lessee asserts here no right except such as that estate conferred upon him. The mortgagor's *consent* to a sale of that lease-hold interest can no more affect the estate of the lessee than it can affect the sale of any other property which he does not own, but which belongs to some other person.

A lessor cannot bring an action of claim and delivery against a trespasser to recover possession of property which has been taken wrongfully from his lessee, until the expiration of his lease. During the existence of the lease an action can only be brought by the lessee himself. (*Bruce v. Westevelt,* 2 E. D. Smith, 440.)

The provisions of our Civil Code before referred to, (section 1701), are as follows: "Contracts of mortgage, pledge, bottomry, or respondentia, are subject to all the provisions of this chapter." Section 1743 of same chapter is: "A mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due, may foreclose the mortgagor's right of redemption by a sale of the property, made in the manner and upon the notice prescribed by the title on pledge, or by proceedings under the Code of Civil Procedure."

Section 1718, same chapter, is: "The sale of any property on which there is a lien, in satisfaction of the claim secured thereby, or, in *in case of personal property, its wrongful conversion by the person holding the lien*" (the italics are mine) "extinguishes the lien thereon."

Section 1776, in the Title on Pledge, provides: "The sale by a pledgee, of property pledged, must be made by public auction, in the manner and upon the notice to the public usual at the place of sale, in respect to auction sales of similar property, and must be for the highest obtainable price."

Section 1773: "A pledgee must give actual notice to the pledgor of the time and place at which the property pledged will be sold, at such a reasonable time before the sale as will enable the pledgor to attend."

Under these provisions of the Statute the question is, was the sale of the property by Hay, the mortgagee, at private sale, after he had taken lawful possession thereof under the mortgage, a "wrongful conversion of the mortgaged property by him?" If this question is answered in the affirmative, it must follow as an inevitable, logical consequence, that the defendant, Buchanan, who can allege no other rights than such as he could claim under a *subsisting* mortgage lien, must fail in his defense.

We are not called upon at this time to determine the rights of an innocent purchaser at a sale of mortgaged property where the mortgagee has attempted to sell the property in the manner pointed out by the law, but has failed, by reason of some unintentional omission, or irregularity in his proceedings, to comply fully with all the provisions of the law governing the sales of mortgaged property. These Statutes, as to the *manner* of sale, are plain and peremptory. It "must be made by public auction."

The defendant had full notice when he undertook to purchase at private sale from the mortgagee: *First*, from the fact that the mortgage with its power of sale, was on file among the records of the county in which the property was situated, more than a year before such sale. From this it appeared that the mortgage itself only authorized a sale at public auction, and, therefore, if he took

the property at private sale it was contrary to the power specifically set out in the mortgage. Further, he admits in his answer that Hay, the mortgagee, on the 19th of February, and before the private sale, took possession by virtue of said chattel mortgage, to foreclose the same, and that two days later he purchased from him at *private sale:* and he claims that by virtue of such purchase he became, and ever since has been the legal owner of said property. *Second,* he had notice of the plaintiff's rights from the lease itself, which was also a matter of record. Moreover, as the general verdict finds for the plaintiff upon all the issues of fact, it finds that the defendant well knew, not only that the lease was on file, but also that the possession was in the plaintiff under the lease, and the character of Hay's possession as mortgagee. With all the notices the defendant thus had, he participated in, and was a party to this private sale. He did so at his own risk and upon his own responsibility, and certainly cannot claim to stand in any better position than would the mortgagee himself. Was this private sale a wrongful conversion of the property? The case of *Vincent v. Conklin,* 1 E. D. Smith, 203, is one in point. The defendant claimed a lien for milling certain flour for the plaintiff. To enforce this lien the defendant shipped the flour to New York City for sale, without a tender and demand for payment for milling, and sold part of it at private sale. The plaintiff brought replevin for the flour remaining in defendant's hands, alleging a forfeiture of the lien. The Court say: "The remaining point is that the Judge erred in charging that if defendant had a lien he was bound to observe good faith, and had no right in virtue of his lien, to make any other disposition of the flour by selling or otherwise, without notice to the owners, and without tender and demand of pay for milling. That the moment he shipped the flour to New York for sale it was a misappropriation of the subject of the lien, which destroyed the lien. *   *   *   * There can be no doubt that a misuse of the property pledged, or subject to a lien, by attempting to sell it before it has become forfeited for a non-payment of the lien, is of itself a conversion and destroys the lien."

The court in the above case holds nothing less in effect than that an intentional failure of the lien holder to proceed in the manner required by law to subject the property to the payment of

the debt is a conversion.    The notice to the owners and a tender and demand for payment for milling were a part of the necessary procedure to that end.

In the case of *Cortelyou v. Lansing,* 2 Caine's Cases in Error, in which the defendant had unlawfully sold pledged property, the Court says:    "I find no difficulty in saying that the defendant had no authority to sell the pledge at the time he sold it.    It was at that time an illegal conversion of the intestate's property."    To the same effect is the case of *Dykers v. Allen,* 7 Hill, 498.    In that case the plaintiff, to secure his note, had pledged certain stock to the defendant.    The defendant sold the stock at private sale.    The Court says:    "The authority to sell the stock in question at the board of brokers, for the payment of the debt, if such debt was not paid when it became due, did not authorize the pledgees, even if they had retained the stock in their own hands, to put the same up secretly.    But they should have put up the stock openly, and offered it for sale to the highest bidder at the board of brokers." *   *   *.

The private sale of the mortgaged property by Hay was "an unauthorized assumption of the right of ownership over chattels belonging to another to the exclusion of the owner's rights," and was clearly a *wrongful conversion* of the property subject to the lien, and worked a forfeiture of the lien.    We are not to be understood, however, as deciding that such conversion extinguished the mortgaged debt.    A lien may be extinguished or released without affecting the debt or claim for which it stands as security.    It follows as a conclusion that the plaintiff must be entitled to the possession of the property.    The special property of the plaintiff, conferring as it did the right of possession, has not been extinguished.    Finding no error in the record, the judgment of the court below is

AFFIRMED.

BARNES, J., dissenting.

MOODY, J., having been of counsel in the District Court, took no part in the hearing of the case.

SHANNON, C. J.—As this is the first case presented to this court requiring full consideration of the law of mortgages, and as the nature of the transition, in this Territory, from the common law to the Codes is materially involved, it is deemed proper, to a due understanding of the contention, to present some general observations explanatory of our existing laws on the subject.

It is now a part of the history of jurisprudence and of legislative progress, that Dakota was the first government to adopt and to put into practical operation anything like a Code of the common law. The Codes, Penal and Civil, of 1865 and 1866, reduced into written and systematic order, not only the rules and decisions of the common law on the subjects embraced, but also to the same extent, the whole body of the law, whether denominated as written or unwritten, tribunal or statutory. Their sources are mostly to be found in Blackstone, Kent and Story, and in the decisions and Statutes of New York. Thus it has occurred that, in this Territory, there is no common law in any case where the law is declared in the Codes. That they have given general, if not complete satisfaction, has been evinced by the adoption of the Revised Codes in 1877. Still, it is somewhat singular that after nearly fifteen years of practice, so little is really known of the sterling value of the improvements introduced by these Codes. It is quite natural that those who have been rigidly trained in the school of the common law, should be averse to our system of Codes; yet it is to be remembered that the laws of Rome in the time of Justinian were reduced into a Code; and the concurring judgment of thirteen centuries since, has pronounced that Code one of the noblest benefactions to the human race, as it was one of the greatest achievements of human genius. France, too, at the beginning of her revolution, was governed partly by the civil and partly by customary law. But the French Codes made one uniform system for the whole country, supplanting the former laws, and forming a model by which half of Europe has since fashioned its legislation. Louisiana may also be adduced as another illustration of the posssibility of a general Code of the law; but California, by her recent action in adopting a codification under the common law, including the law of evidence, has furnished additional proof of the wisdom of our previous legislation.

The Civil Code of Dakota has four general divisions, relating to persons, to property, to obligations, and, lastly, to general provisions connected with these different subjects. Its principles and definitions are, in the main, those almost universally recognized in this country, in modern decisions and Statutes, whilst it contains a few important changes or modifications believed to be the result of the best thought and experience. Among the latter is the law in reference to mortgages, to be found in the third division.

Originally and at common law, mortgages were regarded as conveyances upon condition; and unless the condition was performed at the appointed time, the estate became absolute. But from an early day, to relieve against the apparent hardships and to carry out the manifest intentions of the parties, courts of equity interfered, and considered *the debt* as the principal matter, and the failure to perform at the appointed time only as a matter requiring compensation by interest in the way of damages for the delay. Thus there resulted a right to redeem, which became known as the equity of redemption; and this equitable doctrine, as against the harshness of the common law, has been, in most States, gradually adopted by the courts of law, although in some instances to a limited extent only. (4 Kent, 160.) However, the cases in this country indicated a fluctuation between equitable and common law views of the subject, and a hesitation by the courts of law to carry the equitable doctrine to its legitimate results.

While the original character of mortgages had thus been undergoing a change, there was still so much confusion in the books relative to the rights of mortgagor and mortgagee, that a learned Judge, in 1855, well observed as follows: "It is time that mortgages and mortgage controversies were stripped of legal fiction, of all unnecessary legal technicality, and that courts of law, as well as the courts of equity, in settling the rights of parties in this class of cases, should more particularly regard and carry out the real contract of the parties, in its substance and intent. The doctrine of a mortgage being a mere incident of the debt, is founded in a true view of the mortgage contract, and as in fact intended by the parties, and not of its forms. The mortgage is only in fact intended by the mortgagor, and so understood by the mortgagee, as

collateral security for the ultimate payment of the debt, and not as a sale of the premises." (*Daugherty v. Randall*, 3 Mich., 589 ; 4 Iowa, 571.)

Mr. Justice Story, (in *Conard v. Atlantic Ins. Co.*, 1 Peters, 441,) said that a mortgage is something more than a lien for a debt, "it is a transfer of the property itself as security for the debt." Kent defines a mortgage to be the conveyance of an estate or property by way of pledge for the security of debt, and to become void on payment of it. He states that the legal ownership is vested in the creditor, but that in equity the mortgagor remains the actual owner until he is debarred by his own default or by judicial decree. (4 Kent, 136.) In 1 Washburn on Real Property, 479, a legal mortgage is said to be a conveyance of property, intended by the parties, at the time of making it, to be a security for the performance of some prescribed act. And that the legal estate passes to the mortgagee, see *Stelle v. Carroll*, 12 Peters, 205. As to a mortgage of personal property, however, it was held to be a conveyance of the title upon condition, and to become an absolute interest at law, if not redeemed by a given time. (4 Kent, pp. 138, 141 ; Story on Bailments, pp. 262, 264, as to Pledges ; *Stewart v. Slater*, 6 Duer, 99 ; *Wilson v. Brannan*, 27 Cal., 258.)

In respect to mortgages of real property, and in recognition of the mortgagor's having the ownership at law as well as in equity, the courts of New York, at an early period, went to greater lengths than any of the English cases warranted. They took a sensible departure from an intricate path, and it became and is the law of that State, that mortgages of real property do not transfer the title. (*Collins v. Torry*, 7 Johns., 277 ; *Runyan v. Mersereau*, 11 Johns., 538 ; *Jackson v. Bronson*, 19 Johns., 325 ; *Gardner v. Heartt*, 3 Denio, 234 ; *Waring v. Smith*, 2 Barb., Ch., 135 ; *Kortright v. Cady*, 21 N. Y., 344 ; *Stoddard v. Hart*, 23 N. Y., 560 ; *Power v. Lester*, 23 N. Y., 531 ; *Hubbel v. Moulson*, 53 N. Y. (8 Sick.) 225.)

This view of mortgages of real property was followed in California ; and there when such mortgage is executed, the estate remains in the mortgagor, and a mere lien or incumbrance upon the premises is created, and default in the payment of the money secured does not change its character. There, it is not regarded

as a conveyance vesting in the mortgagee any estate in the land, either before or after condition broken, but as a mere security operating upon the property. (*McMillan v. Richards*, 9 Cal., 365; *Goodenow v. Ewer*, 16 Cal., 461; *Mack v. Wetzlar*, 39 Cal., 247; see also *Caruthers v. Humphrey*, 12 Mich., 270.)

So far as mortgages of realty are concerned, this is the carrying out of the equitable doctrine to its logical consequences; yet, strange to add, in California, (before the adoption of the Civil Code,) it it was held that a mortgage of *personal property* vested the legal title in the mortgagee, subject to be divested on compliance with the conditions of the mortgage. (*Hackett v. Manlove*, 14 Cal., 85; *Moore v. Murdock*, 26 Cal., 527; *Tannahill v. Tuttle*, 3 Mich., 104.)

So likewise in New York, as in other States, a mortgage of personal property, in its ordinary form of a grant upon condition, transfers the title to the mortgagee. (*Bank v. Jones*, 4 N. Y., 507; *Butler v. Miller*, 1 N. Y., 496; *Hitchcok v. Ins. Co.*, 26 N. Y., 68; *Southworth v. Isham*, 3 Sandf., 448; *Shuart v. Taylor*, 7 How. Pr., 251; *Fox v. Burns*, 12 Barb., 677; *Nichols v. Webster*, 2 Pinney's Wis. R., 234, 447; *Flanders v. Thomas*, 12 Wis., 456.)

Thus there was apparent a glaring inconsistency in the application of the principle stated as to the two kinds of mortgage. If, as to realty, the equitable rule should wholly prevail, and there is no transfer of title but a mere lien, why should not the same principle govern in regard to chattel mortgages? This and other complications were so unreasonable and became so jarring that it was conceived to be best to establish a uniform rule upon this subject, and to make all mortgages mere lies upon property. (See *Flanders v. Chamberlain*, 24 Mich., 313.)

Accordingly, in our Civil Code, all mortgages are classified as liens only, or as charges imposed upon specific property by which it is made security for the performance of an act. Mortgages, therefore, are now liens, and nothing more, and they are subject to all the general rules of liens. All former distinctions between mortgages of personal and of real property are abolished. And notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien. (Section 1706.) Consequently, all words of grant or transfer

in a mortgage, are here unmeaning, useless, and obsolete, and correct practice demands an observance of the forms set forth in sections 1736 and 1742.

Moreover, all contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien are void, with a solitary exception relating to lost property. (See section 1707.) This section, of course, embraces all mortgages, and it was a well settled rule in New York. A mortgagor may, however, sell his property to the mortgagee, but the transaction must be a genuine sale, and not a forfeiture. So that even the consent of a mortgagor for a forfeiture is void as against every person having an interest in the property. (Section 1714.) It is also the law that a wrongful conversion of personal property by the mortgagee, or person holding the lien, extinguishes the lien. (See section 1718.)

Above we have seen some of the old definitions of a mortgage, but the Code, with usual accuracy, gives a new one, as follows: "Mortgage is a contract, by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." (Section 1722.)

This definition makes a clear distinction between a pledge and a chattel mortgage, and at the same time avoids the idea of a mortgage being in any sense a transfer or conveyance of title. The property is *hypothecated;* that is to say, according to the well recognized meaning of the term in the civil and admiralty law, and it is thereby rendered liable for the debt, interest and costs out of the proceeds of sale. Pledge requires actual possession. Hypothecation does not. The former is confined to personal property, but mortgage is not. By a pledge, the title or ownership does not pass, and so with regard to hypothecation or mortgage. The contract of hypothecation or mortgage, and the contract of pledge, are both charges imposed upon property, as security only. These contracts, instead of being alienations, now simply confer a right of lien, by which is not meant a lien in the narrow sense applicable exclusively to common law liens, which give the right to retain possession of a specific thing until the charge attached to it is satis-

fied, but by which is to be understood a lien in the sense of our Civil Code, which embraces, in one definition, both common law and equitable liens, and has brought, under one head, all the general principles which affect liens by possession or mortgage.

By the civil law in reference to hypothecations and pledges, the creditor was simply clothed with the authority to sell the property and to reimburse himself for his debt, interest and expenses. (2 Story Eq. Jur., p. 225.)    By the law of Spain, following the civil law, mortgage is a contract by which one binds his property to secure the payment of some other obligation, and the person in whose favor the mortgage is given, has the right to seize the property, and to have it sold at public auction to the highest bidder. (See also to the same purport the Revised Civil Code of Louisiana of 1870.)    And under the French law the creditor only acquires a right to have the property sold.

Our Civil Code rejects altogether on the subject the confusing notions engendered by the decisions of the common law and equity courts, and wisely adopts the general doctrines of the civil law as being consonant with the real intentions of the parties as well as with a sound public policy.

The debtor, or mortgagor, continues to be the owner of the property hypothecated until his title is divested by such sale as the law requires; and the creditor, or mortgagee, has only a right to cause the property to be sold in a legal manner, upon non-performance, and the proceeds to be appropriated in payment of his debt.    This right is limited to the power to sell in a lawful mode, and the title comes from the sale.    The mortgagee has the power to make his lien effectual by following up the steps of the law, and consummating his security by an authorized sale.    His remedy is against the property itself by making that a specific title which was before but a lien. · He cannot usurp the title and confer it upon one who is privy to or has notice of the wrong. And as to possession, a mortgage does not of itself entitle the mortgagee to the possession of the property before default, unless authorized by the express terms of the mortgage. (Section 1733.) To this there is an exception in regard to a chattel mortgage when the property is removed, mentioned in section 1752.

It is thus seen that as a universal proposition a mortgage in Dakota no more conveys a title or an estate than does a judgment; both are liens, and as to each an authentic sale is necessary in order to deprive the debtor of his interest and title.

But again, a mortgage may or may not contain a power of sale, according as it may be agreed upon by the parties. If it does, it comes within the provisions of sections 1729 and 1730, and the power is a trust to be executed in good faith, and as to real property only in the manner prescribed in the Code of Civil Procedure. In all cases the power is to be deemed only a part of the security, and the intentions of the author of the power as to the mode, time and conditions of its execution must be observed, if not contrary to express law. For whenever the mode of execution, as to notice of sale or otherwise, is prescribed by Statute, the Statute must be followed whatever may be the provisions of the power in this respect. The power may, perhaps, impose additional obligations, as distinguished from mere formalities, but cannot take away any of those imposed by Statute. If the power and the Statute are in accord there can be no difficulty as to the manner of execution. The requirements of the Statute, or of the valid power, are conditions on which the foreclosure depends, and if not fulfilled the sale is void. The purchaser is bound to know what the requirements of the instrument, or of the Statute, are in this respect, and to see that they have been complied with. (See 2 Jones on Mortgages, bottom pages, 610, 614, 616.) Therefore, when a public sale is required by the instrument, the trustee must conform, and it is not competent to make a private sale. (*Greenleaf v. Queen*, 1 Peters, 145.) A private sale, though expressly authorized by the mortgage, will not bar the equity of redemption, when a sale at public auction, after giving specified notices, is required by Statute. (*Lawrence v. Farmers' Loan Co.*, 13 N. Y., 200.)

If the power makes provision for a sale by public auction, this precludes the right to sell at private sale, and the latter is invalid. (*Griffin v. Marine Co.*, 52 Ills., 130; *Gunnell v. Cockerill*, 79 Ills., 79; 2 Jones on Mort., p. 634.)

To affect a valid sale under a power, all the directions of the power must be complied with; and the entry authorized by it, is

for the purpose of the sale only, and to enable the sale to be made. (*Cranston v. Crane*, 97 Mass., 457; 2 Jones on Mort., paragraphs 1778 and 1782.)

The seizing of possession under such power, does not, of itself, affect the nature of the mortgagee's interest; it does not enlarge or abridge his interest, or convert what was before a security into a title; it is a measure preliminary to the sale by which alone the ownership is changed. With possession, but without due sale, the mortgage remains but a lien to be extinguished by a sale or a wrongful conversion. Possession lawfully acquired virtually transforms the mortgage into a pledge, and the pledgee obtains not a common law lien, but the mere right to sell.

If a mortgage does not embrace a power of sale, and is on real property, an action in the nature of foreclosure is necessary, and the sale must be public, and otherwise made as prescribed by section 622 of the Code of Civil Procedure. But if it does, the power can be executed only in either of the modes declared in chapter 28 of the Code of Procedure; that is to say, without an action and by public advertisement and sale, or by action, at the option of the holder.

Two methods to enforce the lien of a chattel mortgage, are provided by section 1743 of the Civil Code—the one by an action, the other without action. (*Following Patchin v. Pierce*, 12 Wend., 61, and *Hart v. Ten Eyck*, 2 Johns. Ch., 100.) By the first mode, the sale upon the judgment must be public and on ten days notice. (Chapter 32, section 674 of Civil Procedure; section 1782 of Civil Code.) By the second, upon default, and without the intervention of a court, the mortgagee, (even in the absence of any stipulated power,) may proceed to sell in the manner and upon the notice prescribed for the sale of a pledge. This, also, requires public auction, with usually, perhaps, ten days notice to the public. (Section 1776 of Civil Code; section 335 of Civil Procedure.) And this power to sell implies the right to take possession for all the just purposes of such sale. So that, if the instrument contain no power, the law itself supplies one, and one, too, which is as simple, convenient and complete, to all intents and ends, as the parties themselves could fairly and reasonably devise.

Under this system, so easy and protective to the creditor, it would, therefore, appear to be almost supererogatory to incorporate into a chattel mortgage any power of sale, although it is commonly done, but with the precaution that the power correspond with the statutory provisions.

For whenever statutory notice is an ingredient of foreclosure, it is a condition precedent, and its omission renders the sale irregular and void; and the mortgagor may maintain trespass, or ejectment, for an invasion of his rights. (*Van Slyke v. Shelden*, 9 Barb., 283; *Cohoes Co. v. Goss*, 13 Barb., 137; *Cole v. Moffitt*, 20 Barb., 18; *Low v. Purdy*, 2 Lansing, 422.) And so where any essential act is omitted, as, for example, a demand; or where a sale is made before the stipulated time; and the injured party can maintain replevin. (*Newsam v. Finch*, 25 Barb., 175;—see also sections 1772 and 1773 of Civil Code.) In fact, whenever, under an attempt to foreclose, there is a void sale of chattels, an action to recover the possession will lie even in favor of any one having a special property therein and lawfully entitled to the possession. Under our Codes, the aggrieved party is not limited to an action in the nature of a bill in equity, to redeem.

In regard to redemption, in New York, a mortgagor of chattels could redeem, in equity, after the law day had passed, and at any time before his rights were foreclosed by a sale. Like a judgment debtor, he had this right up to the period of sale. (*Hinman v. Judson*, 13 Barb., 629; *Kortright v. Cady*, 21 N. Y., 343.) To the same effect is *Flanders v. Chamberlain*, 24 Mich., 305, which holds that the taking of possession by the mortgagee, no more cuts off the mortgagor's right of redemption, than the like possession in case of real estate. And also that if the mortgage provides how and upon what notice the mortgagee may sell, to-wit: "At public auction after the like notice as is required by law for constables' sales,"—such express provisions cut off all implications, and the mortgagee can only sell, so as to cut off the equitable right to redeem the property, by making the sale according to this express power. Moreover, though his title was absolute at law, he could not sell the property in any other mode so as to preclude the mortgagor's right to follow the specific property, and to redeem it,

—unless, perhaps, when sold to a *bona fide* purchaser without notice of the mortgagor's equities.

But these and other decisions have here given place to positive enactments. They are no longer the sole guides; for when the Code speaks, the common law vanishes. They may furnish the reasons for the law, and aid in its interpretation, but nothing more. Redemption from the lien of a mortgage, is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages to which the holder is entitled for delay. Not merely the mortgagor, but every person having an interest in the property subject to the mortgage, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed. (Sections 1714 and 1716.)

Under the rule before the Code, a lessee of the mortgagor having a lease valid against him, though not binding upon the mortgagee for the reason that it was made after the mortgage, had a redeemable interest; and this although the lessor, being also the mortgagor, had released his equity of redemption to the holder of the mortgage. (*Keech v. Hall*, 1 Doug., 21 ; *Bacon v. Bowdoin*, 22 Pick., 404 and 2 Met., 591; *Averill v. Taylor*, 8 N. Y., 44.) So also a doweress might redeem; and any person having an interest in the property. (*Wheeler v. Morris*, 2 Bosw., 524; *Downe v. Morris*, 3 Hare, 394.)

The Code, therefore, particularly declares that every person who has an interest in the property mortgaged, has a right to redeem, and if a lessee of real property has such interest in the property, so also has a hirer of personal property, unless he is, in some way precluded by Statute; for each alike acquires, by the contract, the temporary possession and use of the property, or, in other words, a special property. (How this may be affected by the new section 579, added to the Penal Code on February 7, 1877, it is not necessary now to consider; for the main contracts in the present case were made in January, 1876.) It follows that where one has a right to redeem until legal sale, he is not compelled to do so at an earlier period, and that if there be an invasion of his rights by proceedings which are null, redemption is

not the sole remedy, because, in many cases it would not be adequate to obtain the specific property. At all events, a party can not be deprived of a right of action which the statute expressly gives him.

But that an offer to perform is unnecessary where there has been a wrongful conversion, and that it works an extinction of the lien, is not a new doctrine first advanced in the Code. (See sections 855 and 1718.) As early as 1805, Kent, J., thus decided as to property pledged, in *Cortelyou v. Lansing*, 2 Caine's Cases, 202. That was *assumpsit* to recover the value of the pledge without any tender, after the pledgee had illegally sold it. The plaintiff was allowed to recover upon the ground that the defendant had no authority to sell the pledge at the time he sold it, and that the sale was an illegal conversion of the property. The act of the creditor, in making the unauthorized sale, discharged the debtor from a performance. Kent, J., said, " But when one party has *incapacitated* himself to perform his part of the contract, there is no need of the other coming forward at the time to make a tender, or to show himself in a capacity to pay, because it would be a nugatory act which the law will never require. If the one party *discharges* the other from a performance, by saying he·will not perform on his part (and voluntarily and tortiously rendering himself unable to perform his part, is equivalent to such discharge,) it is well understood that it is not necessary for the other party to go forward." (See also *Dykers v. Allen*, 7 Hill 497 ; *Wilson v. Little*, 2 N. Y., 443 ; *Lewis v. Graham*, 4 Abb. Pr., 106.) Thus the pledgee having, in violation of the trust and of the contract, voluntarily and wrongfully put it out of his power to restore the property, a tender of the money borrowed would have been fruitless, and was therefore unnecessary.

By way of illustration, take the case of a factor who by our Statute has a general lien, but who cannot pledge, mortgage or barter the property intrusted to him. (Civil Code sections 1388 1807.) Formerly, if the factor did so pledge or dispose of the property, the lien was so annulled that the principal might recover in trover against the pawnee, without tendering to the factor what was due to him, and without any tender to the pawnee of the sum for which the goods were so pledged. (See opinions of

Wayne, J., in *Warner v. Martin*, 11 How. 225; *Newbold v. Wright*, 4 Rawle, 195.) Indeed, the later decisions before our Code, if they had not fully settled the law, at least had afforded strong authority for the doctrine that a pledge by a factor of his principal's goods was wholly tortious; and especially where the pledgee had notice of the want of power to make such disposition of the goods. (*Buckley v. Packard*, 20 Johns., 421; *Rodriguez v. Hefferman*, 5 Johns., Ch. 429.) Whatever uncertainty or confusion there may have been, in this regard, in the commentaries and decisions, has been dispelled by the Code, which further declares that if the factor is forbidden to sell at the market price, he may nevertheless sell for his reimbursement, but only after giving to his principal reasonable notice of his intention to do so, and of the time and place of sale, and by *proceeding in all respects as a pledgee*. (See Story on Agency, section 113; Storey on Bailments, ninth edition, section 326, and note; Civil Code, sections 1169 and 1388.)

We find, therefore, that under the harmonious operation of the Code, factors and mortgagees of chattels are at least assimilated in one particular, to-wit: in reference to the mode of foreclosing or selling for reimbursement; and that in the one case as in the other, a wrongful conversion by the person holding the lien, extinguishes the lien. The charge imposed on the specific property, making it a security is thereby destroyed. The act of dominion wrongfully exerted over the property, frees it from the burden; the contract making it responsive is at an end; because both the trust and the law are wilfully violated. And no authorities are needed to buttress the proposition; for the Statutes so declare the law to be.

But again, the annulling of the lien, by a wrongful conversion, when justly considered, works no unfair or undue hardship upon the mortgagee, especially when it is contrasted with the severe inflictions now imposed on the other party, when he makes an illegal sale or disposition of the property. When the mortgagor is so rigidly bound to the observance of good faith and fair-dealing, why should the mortgagee complain against a law, which so mildly holds him to a like observance? The comparison is, in fact, rather repulsive, because it exhibits a mere abrogation of the

lien on the one hand, and the pains and penalties of felony on the other. (Penal Code, section 579.)

But however this may be viewed, the logical consequence of the doctrine is, that whenever, and by whatever means, the lien is wiped out, the right to retain the property instantly ceases, and the right of the other party to his property becomes absolute. We must be careful not to be misled by the varying and wavering decisions of the common law; because cases of strict pledge, are now governed by chapters 1 and 3 of title XIV of the Code; whilst mortgages are regulated by the first two chapters of the same title.

The case under consideration is not one of a strict pledge, with a re-pledge by the first pledgee; but it is one of mortgage attempted to be foreclosed by an illegal private sale. Still more it is not a case of a purchase in good faith, in the ordinary course of business, without notice of the rights of other parties.

If we examine into the origin of powers of sale in mortgages, we shall find that they were employed in order to give a more expeditious, and a less expensive and cumbersome mode of relief than by proceedings in court. At first it was an objection that the creditor himself was made the trustee; but hence, now, there is only additional reason for holding him strictly to the terms and conditions of the trust. The power thus became the substitute for a decree, and the equivalent to an order, or writ of execution; and the mortgagee, for the occasion, became, as it were, the officer to carry out the foreclosure. Therefore, the abuse of the power, particularly where its exercise is regulated by law, may be compared, in principle, to the abuse of process. An officer who levies on chattels and fails to give the notice of the time and place of sale, and nevertheless proceeds to a sale, becomes a trespasser *ab initio*; for the law will impute to him the indulgence of a purpose to sell thus wrongfully at the time he made the levy. If he levies and makes a private sale, it is void; because he has no authority to sell in that manner, and the purchaser must take notice of such an illegality.

No individual or public officer can sell and convey a good title to the property of another, unless authorized so to do by express law; and the person invested with such a power must pursue

with precision the course prescribed by law, or his act is invalid. A purchase of personal property from one who has no authority to sell, or who sells in a manner contrary to law, where the purchaser takes a delivery of it and retains the possession, claiming it under such sale, is a conversion of it.

From this general review of the law of mortgages, can readily be gathered the principles which must govern the present case. The mortgage was on two printing presses, and on all the cases, types, materials, and everything that composed the Sioux Falls Pantagraph job and newspaper establishment. The power, in case of default, was that it should be lawful for the mortgagees or their assigns, "to take possession of the said described property, wherever it may be found, and to sell the same at public auction after giving ten days notice thereof as required by law for constable's sales, and to retain out of the same the amount due on said note, and interest and all reasonable expenses of said sale, paying the balance, if any there be, to the said John McClellan," the mortgagor. It is to be observed that this power almost exactly corresponded with the law on the subject, and was but a substantial repetition of it. (Civil Code, sections 1743, 1776, 1779; Justices' Code of 1866, sections 139 and 140; new Justices' Code, section 77.) Hence, on the part of the holders of the power, there could be neither doubt nor difficulty as to the manner of its exercise. The instrument and the law were in perfect accord; and by following up the steps pointed out he could easily have consummated his security, and conferred rightful possession and a valid title upon the purchaser.

But instead of doing so, he chose to violate the trust, and to set both the law and the power at defiance. He had but a lien, and the taking of possession, on default of payment, did not enlarge his interest or give him an absolute dominion over the property, nor was possession authorized unless in direct conjunction with public notice and sale by public auction. When possession was thus taken, the property instantly came under the protection of the trust, and under the dominion of the law, and could be disposed of only in the way prescribed by law.

Again, the mortgage was from McClellan to J. D. Cameron &

Co., bearing date the 26th of January, 1876, and was properly filed in the register's office the same day. Five months afterwards, I. M. Hay voluntarily took an assignment of it, when the plaintiff (Everett) was in possession of the property, under the contract between him and the mortgagor, dated the 27th of January, 1876, and by which the plaintiff had the privilege of purchasing the property and the business therewith CONDUCTED, at any time during the period of the hiring, at a price fixed in the contract. And the instrument of assignment itself, bearing date the 3d of July, 1876, expressly reserves the right of redemption not merely to the mortgagor, but to his " assigns " also.

The defendant (Buchanan) in his verified answer to the complaint, after a general denial, places his defense on the ground of an alleged legal ownership of the property, and to show this, states the mortgage and its assignment to Hay, and then proceeds to allege what forms the vital question, to-wit, " that on or about the 19th day of February, 1877, the said I. M. Hay took possession of the property described in plaintiff's complaint by virtue of said chattel mortgage, and foreclosed said mortgage by selling the property therein described at private sale, in the village of Sioux Falls, D. T., on or about the 21st day of February, 1877, to this defendant for the sum of four hundred and fifty dollars ; and that said property was delivered to this defendant by the said I. M. Hay, by reason of said purchase, and that this defendant, by virtue of said purchase, became and ever since has been the legal owner of said property."

Upon the issues thus formed, the case was tried by a jury who found "*for the plaintiff upon all the issues*," and also found the value of the absolute property of plaintiff described in the complaint, to be thirteen dollars, and the value of the special property of the plaintiff described in the complaint, to be seventy-five dollars, and assessed the plaintiff's damages for the detention at twenty-five dollars. This general verdict, if standing alone, would have settled the controversy, but we must observe that as to the new matter, or particular facts set forth in the answer, the jury also brought in written findings substantially sustaining them. (See Code of Civil Procedure, section 261.) And we can perceive nothing in the special findings inconsistent with the particular

defense, or that would warrant the court in drawing from them any conclusion antagonistic to such defense, or in any manner enlarging it.    Consequently, all the issues of fact were found for the plaintiff, with the exception of the new matter which was found for the defendant, and thereby the latter had nothing left to rest upon, apart from the facts contained in his answer.    And to these facts we must recur to ascertain what rights, if any, the defendant had acquired.    Thus narrowed, what was the defense ?    This, that Hay took possession by virtue of the mortgage, but that he afterwards sold the property at private sale to the defendant to whom it was delivered by Hay.    The answer admits that the mortgage containing the power of sale was duly filed more than a year before the alleged purchase.

Then, as a question of law, did the District Court err in rendering judgment for the plaintiff?    Was the defendant lawfully entitled to retain the possession as the owner or as having a special property ?    Both these questions must be answered in the negative. The defendant was not a purchaser in good faith, without notice, in the course of the power and of the law.    He had notice of the terms of the power and of the rights of the plaintiff, and he was bound to know the law.    Notwithstanding all this he participated in the illegal and wrongful transaction, and cannot, therefore, claim exemption from the consequences of his own voluntary act. Such sale is not only contrary to the policy of the law, but is against express law.

In this case no bill of exceptions was ever settled or asked to be so.    Consequently there is nothing before this court but the judgment roll, and all else in the transcript sent up by the clerk, must be struck out.

The judgment of the court below should be

AFFIRMED.